**Richard Lee LANKSTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–90–016–CR.**

Court of Appeals of Texas, Waco.

Nov. 18, 1992.

Michael Logan Ware, Michael Logan Ware, P.C., Fort Worth, for appellant.

Dan M. Boulware, Dist. Atty., William G. Mason, Asst. Dist. Atty., Cleburne, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION ON REMAND

CUMMINGS, Justice.

This court affirmed Appellant's convictions for Aggravated Sexual Assault and Indecency with a Child in an unpublished opinion. The Court of Criminal Appeals reversed and remanded the cause to this Court for disposition of Appellant's claim that harmful hearsay evidence was improperly admitted before the jury. *See Lankston v. State*, 827 S.W.2d 907 (Tex.Crim. App.1992). We will now analyze the error to determine if it was harmful. *See* TEX. R.APP.P. 81(b)(2).

Because of the improperly admitted hearsay evidence, we must reverse the judgment unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *See id.* In applying this rule, we focus not on the propriety of the trial's outcome but on the integrity of the process leading to the conviction. *See Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). We examine the source of the error, the nature of the error, whether or to what extent the State emphasized it, and its probable collateral implications. The court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity. *See id.*

We first isolate the error and all its effects, using these considerations and any other considerations suggested by the facts of the case. *See id.* at 588. We consider how much weight a juror would probably place on the error and ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *See id.*

The source of the complaint was Carol Black, the State's fourth and final witness. She was a Child Protective Services worker with DHS to whom the victim had made an "outcry" statement concerning the aggravated-sexual-assault charge.

In compliance with article 38.072 of the Texas Code of Criminal Procedure, the State had provided the Appellant, in advance of trial, "a written summary of the statement" it meant to offer through Black. *See* TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(b)(1)(C) (Vernon Supp.1992) This summary notified the Appellant that:

> ... the witness will testify that the child told the witness that the offense was committed in approximately June, 1987, and the witness will testify that the child told the witness that the crime was committed under these circumstances: at about 8:30 or 9:00 p.m., the victim was in her bedroom when said Defendant [Appellant] came into the bedroom sat on the bed and exposed his penis. Defendant [Appellant] had the victim pull on his penis and then put his penis in the mouth of the victim.

Before Black could answer the first question concerning the alleged outcry, Appellant's attorney made an objection (or request) that the State pose its questions so that the witness would not go outside the parameters of its article 38.072 notice letter. The trial judge responded that he expected the attorneys "to stay within the parameters of 38.07[2]."

Black then answered the next question as follows:

> She [the victim] told me that around June of 1987, they were living in Keene at the same home on Santa Fe Street with her mother, stepfather and younger sister. She said her mother was working and would go to work about 7:00 o'clock in the morning, and that her stepfather went to work later on in the afternoon— in the morning around 9:00 o'clock. She said usually she would go into his room and bring a cup of coffee.

Appellant's attorney then renewed his hearsay objection. The Court of Criminal Appeals found it was error for the trial judge to overrule the objection because, "Clearly at this point the witness was testifying about an incident other than that described in the State's written summary of her proposed testimony." *Lankston*, 827 S.W.2d at 910. The trial court then

erred in allowing Black to testify about an act of sexual misconduct other than that of which Appellant had been given notice. Her testimony was as follows:

Right. She started—you know, after her mother had gone to work at 7:00, she would go in and give her stepfather a cup of coffee when he was still in bed in the bedroom. She said he would—he started, at that point, fondling her breasts inside her clothing and outside her clothing, and also her vagina inside and outside her clothing. She said also he started kissing her and fondling her and would kiss her on her lips, her breasts and her vagina. She said sometimes he also would masturbate against her vagina to the point of ejaculation.

She said—and when I talked to her more specifically about if he put his penis inside her vagina, she said, no; he had tried to, but he did not put his penis inside her vagina, he would rub it on the outside of her vagina until he ejaculated on her vagina. But there was never any penetration inside of her vagina.

Immediately following this testimony Black testified without objection concerning the incident described in the State's written summary of her proposed testimony, as follows:

She said one night, she had gone to bed about 8:30 or 9:00 o'clock at night, and he had come into her bedroom. They lived in a three-bedroom home. She and her sister each had their own bedroom. And he closed the door but left it open partially, where he could look out the door and see if anyone was coming. He sat down on the edge of the bed where she was sleeping and took her hand. He had a robe on with underwear on. He took her hand and had her masturbate him. And then he—she told me he asked for one more favor, if he could put his penis in her mouth. He put his penis in her mouth, and she said he moved it around until "some white sticky, yucky stuff came out that was real slimy." She said then she went to the bathroom and spit it out because "it was slimy and tasted yucky." And then he left the room and went to another part of the house.

A review of the State's evidence reveals that the victim's mother testified first as an "outcry" witness concerning the charge of indecency with a child. She also testified that the next day after the child told her about the indecency incident, that she took her daughter to the Child Protective Services office where the child was interviewed by Carol Black. It was during the child's interview with Carol Black that she first told anyone about the alleged aggravated sexual abuse offense.

The second State's witness was the victim. At the time of the trial she was twelve years of age, having been born on September 3, 1977. She related that her stepfather, the Appellant, had committed sexual indecencies with her since prior to marrying her mother in 1986. She testified without objection about ongoing sexual abuses committed by the Appellant, including the sexual misconduct erroneously admitted into evidence through Carol Black. According to her testimony, the Appellant had committed similar types of conduct on several occasions prior to making the outcry statement to her mother on January 2, 1989. We originally found that this evidence concerning extraneous offenses, which was admitted without objection, was admissible, citing *Boutwell* and its progeny—we still believe it to be admissible. *See Boutwell v. State*, 719 S.W.2d 164, 178 (Tex.Crim.App.1985) (on rehearing).

The State's third witness was the victim's younger sister who testified that she had watched through a slightly cracked door into the victim's bedroom where she observed the Appellant on his hands and knees on the victim's bed. She testified she could see that the victim's shirt was up on this occasion.

Following Carol Black, the State's final witness, the defense called nine witnesses. The testimony of two of the witnesses involved an attempt to impeach the victim's mother with evidence that she may have stated at one time that her two daughters were jealous of their stepfather [the Appellant]. Six of the defense witnesses were character witnesses, including a former wife and her daughter, other relatives, a

former employer, and a friend. The defendant testified last and denied the charges of sexual assault.

Our review of the record does not indicate that the erroneously admitted evidence was emphasized by the State or that it had any harmful collateral implications. Carol Black was never asked and did not give an opinion as to whether she believed the victim's allegations to be true. She merely repeated what she said the victim told her. When otherwise objectionable evidence is admitted elsewhere the error is harmless. *Mays v. State*, 816 S.W.2d 79, 88 (Tex.Crim.App.1991). Black's testimony was not emphasized by the State in its guilt-innocence argument. She was mentioned as a witness in the opening and her name was referred to in the closing argument without objection, as follows: "Carol Black, 15 years, no doubt in her mind." Compared to the matters that were emphasized by the State in closing argument, this comment appeared inconsequential. The prosecutor did not repeat any of Black's testimony, and nowhere in the record did Black indicate she had "no doubt in her mind" about the victim's allegations. Because there was no objection concerning that portion of the argument, however, any complaint was waived. *See* TEX.R.APP.P. 52(a).

The evidence receiving the most emphasis in closing argument by the State was the victim's testimony that "he put it in my mouth and white, slimy stuff came out, and I had to go in the bathroom and spit it out, and it tasted yucky," which was repeated five times. The extraneous sexual misconduct was mentioned once in closing argument as a quote from the victim, not Black. The corroborating testimony of the victim's younger sister, concerning seeing the Appellant on his hands and knees in bed with the victim, was given greater emphasis by the State in final argument than the passing reference to Carol Black.

In view of the fact that the victim's mother testified concerning the child's outcry to her about the indecency charge; that the victim testified without objection to the extraneous sexual misconduct; that the victim's younger sister corroborated the victim's testimony; and that the State's main emphasis during final argument on guilt-innocence was on the victim's statement that "he put it in my mouth," we do not believe a rational trier of fact would have reached a different result if the error and its effects had not occurred. *See Harris*, 790 S.W.2d at 588.

Because the victim had already testified about the complained-of extraneous sexual misconduct along with other extraneous misconduct before Carol Black testified, we do not find that a juror would have been unduly affected by hearing the extraneous matter again, especially since a juror could have considered the extraneous misconduct less aggravating than the evidence of the Appellant ejaculating in the victim's mouth. Though all of his actions were disgusting, the Appellant did not follow through with his attempts at penetration mentioned in the extraneous matter. A juror could have considered this as a mitigating factor.

After applying the *Harris* standards, we conclude beyond a reasonable doubt that the erroneously admitted hearsay testimony did not prejudice the jurors' decision-making process or contribute to Appellant's conviction.

During the punishment phase of the trial, the State did not introduce any additional evidence, but relied on the evidence admitted during the guilt-innocence phase. The Appellant's mother testified and requested that the jury grant him probation. His attorney also introduced a stipulation that the Appellant had never before been convicted of a felony crime and was eligible for probation.

The State's closing argument stressed that probation should not be granted in this type of case. The State's argument used fifteen pages of the record, but only one sentence was used to summarize the sexual offenses. Carol Black was never mentioned. The tenor of the State's argument emphasized why punishment was necessary in a case involving child molestation and the reasons why probation would not be appropriate. It was mentioned in the argument that the Appellant was forty-two years of age, had been married five times, has a child whom he doesn't seem to want

to see, and has had two prior DWI convictions.

From our review of the record, it does not appear that any emphasis was placed on the error during the punishment phase. We find that the error was not of such magnitude that it disrupted the jury's orderly evaluation of the evidence. Additionally, the error did not appear to have been planned or contrived. It is apparent that the victim told Black many instances of sexual misconduct that occurred over a three-year period, and it was obviously difficult for her to discern from the question, twice interrupted by objections, exactly which incident she was to relate. Nor do we believe the State would be encouraged to repeat this type of error with impunity upon a finding of harmless error. To the contrary, the State will be encouraged to prevent this unfortuitous, but harmless, error from recurring. Accordingly, we conclude beyond a reasonable doubt that the error was harmless and did not contribute to the Appellant's convictions or punishment.

We affirm the judgment.