**Steven Edward BOTTENFIELD, Appellant,**

**v.**

**The STATE of Texas, State.**

**Nos. 2–00–487–CR, 2–00–488–CR.**

Court of Appeals of Texas, Fort Worth.

March 14, 2002.

Dissenting Opinion on Overruling of Rehearing May 16, 2002.

---

Dean M. Swanda, Arlington, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Curtis Jenkins, Bret Helmer, D.D. Handy, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Panel F: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

### INTRODUCTION

Appellant Steven Edward Bottenfield appeals his convictions for aggravated sexual assault and indecency with A.H. and T.H., children under fourteen years of age. A jury found appellant guilty of the offenses and assessed his punishment at life imprisonment for each offense. On appeal, appellant raises sixteen issues complaining of error during voir dire, improper jury argument, jury charge error, evidentiary error, and legal and factual insufficiency of the evidence. We affirm.

### BACKGROUND

In appellate cause number 2–00–487–CR, the indictment alleged in two counts that on or about September 30, 1997, appellant intentionally and knowingly penetrated the sexual organ of A.H. with his finger and engaged in sexual contact with A.H. by touching her genitals. In appellate cause number 2–00–488–CR, the indictment alleged in two counts that on or about September 30, 1997, appellant intentionally and knowingly caused the sexual organ of T.H. to contact his sexual organ and engaged in sexual contact with T.H. by touching her genitals.

The testimony at trial showed that Edwin Hammock, A.H.'s and T.H.'s father, allowed appellant to move into a spare bedroom in Hammock's house in 1997. Hammock's common-law wife Kim, his two other children, and their friend Sharon also resided in the home. Sharon's son and boyfriend would occasionally spend the night or stay for several days. Hammock and Kim sold drugs and engaged in daily drug use in the home.

A.H. and T.H. often went into appellant's bedroom to draw and color on his coffee table. In February 1998, Hammock found letters written by appellant to his wife and five or six pairs of children's pants "cut to fashion [provocative] underwear." Hammock confronted appellant, called him a "pervert," and kicked him out of the house. In January 1999, both Hammock and Kim were arrested for drug-related offenses. Hammock was incarcerated at the time of trial, and his parental rights to his children had been terminated.

After the arrests, three of Hammock's children, including T.H. and A.H., were placed in the foster home of Peggy Roy. In May of 1999, during a telephone con-

versation monitored by Roy, T.H. told her biological mother, Chiquita, that a man named Steve had "touched her in between her legs." Immediately after the call, T.H. told Roy in greater detail that appellant had touched her vaginal area and "put his thing right there." At trial, T.H., who was ten at the time, specifically recalled one encounter with appellant in which he took her to his room and removed their clothes. His penis was "sticking up," and he made her touch his penis and told her to "lick it." Appellant got on top of her and touched her breasts with his hands and put his mouth on her breasts. He put his finger on the "outside" of her "privates" and touched his penis to her "privates." He moved the "middle part of his body" and "clear stuff" came out of his penis onto her skin. Appellant told T.H. not to tell anyone about the incident. After that, T.H. was scared of appellant and tried to avoid him. During her sexual assault examination in July 1999, T.H. made a substantially similar statement to medical personnel. T.H. had a normal physical examination, which was not inconsistent with the alleged abuse.

A.H., who was six at the time of trial, recounted one instance when appellant took her to his bedroom and "touched [her] in a bad way." According to A.H., appellant took her clothes off and touched her on the inside of her "winkie" or "private parts" with his finger. She said it felt "bad" and that appellant told her to "keep it a secret." A.H. identified her female sexual organ as her "private" on an anatomically correct doll. A.H. made her outcry to Dr. Polakoff, the child psychologist who conducted an assessment of A.H. for the foster agency. A.H. told Dr. Polakoff that appellant put his finger in her "privates" and then put his finger in his mouth. She said that appellant took down his pants, but did not touch her with his genitalia. She diagnosed A.H. with "major

depression." During her sexual assault examination, A.H. told medical personnel that appellant put his finger "up [her] winkie" and made her touch his penis or "goober." She said appellant "did it with [her] winkie two times." There were no physical findings of abuse. A.H. was unable to identify appellant at trial.

Appellant testified and denied sexually assaulting T.H. and A.H. He admitted to being addicted to methamphetamine when he moved into the Hammock home, that he used methamphetamine by injection with Hammock and Kim, and that he had an extensive criminal history. He also admitted to cutting up eight to ten pairs of children's pants he found in the attic of the house. According to appellant, several of the strippers from Baby Dolls would come home with him and would wear the children's clothes to sexually arouse him. Appellant stated that he got along well with the children and enjoyed having them in his room to color and play and that the children liked him.

Based on the evidence, the jury found appellant guilty of all four counts in the indictments.

### SUFFICIENCY OF THE EVIDENCE

In issues nine through sixteen, appellant contends the evidence is legally and factually insufficient to support his convictions.

A person commits aggravated sexual of a child if he intentionally or knowingly causes the penetration of the female sexual organ of a child by any means or causes the sexual organ of a child to contact his sexual organ. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iii) (Vernon Supp. 2002). A person commits indecency with a child if he engages in sexual contact with the child. *Id.* § 21.11(a). "Sexual contact" means any touching of the breast or any part of the genitals of another person

with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.01(2).

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State,* 30 S.W.3d 384, 389–90 (Tex.Crim. App.2000); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In contrast, in reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson,* 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis,* 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson,* 23 S.W.3d at 9, 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

In A.H.'s case, appellant contends that the evidence is legally and factually insufficient to prove he committed the offenses given the fact that A.H. was unable to identify him at trial, A.H. had a normal physical examination, A.H. probably heard her father call him a "pervert" and knew her father disliked him, A.H. admittedly disliked him, and A.H.'s testimony was inconsistent with statements she made to medical personnel.

On the issue of identity, the evidence shows that A.H. made an outcry against appellant and positively identified him from a photographic lineup before trial as the person who sexually assaulted her. Detective Eck, who investigated the allegations against appellant, testified that in June 1999 she showed each girl, separately, a "photo spread" that included a photo of appellant and that A.H. indicated appellant was the perpetrator. At trial, A.H. recalled that the man who sexually abused her was named "Steve," she described his appearance when she knew him, and she remembered that he had lived in the back bedroom of their home. Further, Hammock and T.H. positively identified appellant at trial and confirmed that appellant was the person who lived in the back bedroom of their home during the relevant time period. There is no evidence tending to disprove appellant was the person who assaulted A.H. or to suggest a different person may have been the actor, although there is some evidence that other men had access to the children. This fact, alone, however does not greatly outweigh

the evidence that appellant is the guilty person. *See Johnson,* 23 S.W.3d at 10–11.

Nor does the fact that A.H. had a normal physical examination render the evidence legally or factually insufficient. Medical testimony indicated that a normal exam was not inconsistent with the type of abuse A.H. complained of.

 Appellant's final complaints raise a question of the credibility of the witnesses. In fact, appellant concedes that A.H.'s allegations "boiled down to a swearing match between A.H. and [himself]." An appellate court is governed by the legal axiom that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Taylor v. State,* 947 S.W.2d 698, 702 (Tex. App.—Fort Worth 1997, pet. ref'd). The jury is free to believe or disbelieve the testimony of any witness, to reconcile conflicts in the testimony, and to accept or reject any or all of the evidence of either side. *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Taylor,* 947 S.W.2d at 702. Thus, we assume the jury believed the testimony of A.H. in light of any potential bias or motive and resolved any inconsistencies in her testimony.

After applying the applicable standards of review, we conclude the evidence is both legally and factually sufficient to support appellant's identity and guilt for the offenses of aggravated sexual assault and indecency with A.H. We overrule appellant's issues nine through twelve.

In T.H.'s case, appellant contends the evidence is legally and factually insufficient to prove he committed the offenses against T.H. because she had a normal physical examination, T.H. probably heard her father call him a "pervert" and was biased against him, her testimony contained various inconsistencies, she suffered from major depression, and she was motivated to fabricate the allegations to "facilitate reuniting" her family. Again, appellant concedes T.H.'s allegations "boiled down to a swearing match between T.H. and [himself]." As in A.H.'s case, the testimony at trial indicated that a normal examination was not inconsistent with the type of abuse T.H. reported. Moreover, as previously stated, we assume, given its guilty verdicts, that the jury believed the testimony of T.H. in light of any potential bias or motive and resolved any inconsistencies in her testimony.

After applying the applicable standards of review, we conclude the evidence is both legally and factually sufficient to support appellant's guilt for aggravated sexual assault and indecency with T.H. We overrule appellant's issues thirteen through sixteen.

## VOIR DIRE

In appellant's first issue, he contends the trial court erred by refusing to quash the venire when two veniremembers provided personal and specialized information to the rest of the venire that favorably impacted the State's cases. During voir dire, the prosecutor informed the venirepanel of the nature of the charges against appellant and explained that frequently the State's only evidence in these types of cases was the testimony of the child victim. The prosecutor asked the venire what other types of evidence might be available, and several venirepersons indicated that medical evidence could show that the offenses occurred and that, if it was available, they would expect to hear it. In this context, the State questioned venireperson Redden, a nurse, and venireperson Yoon, an internist and pediatrician, about the likelihood that a physical examination of a

female child sexual assault victim would render medical evidence indicative of digital penetration, sexual contact, or fondling. The prosecutor also questioned Redden and Yoon about the rate of healing for the female sexual organ. Both Redden and Yoon had some experience in conducting sexual assault examinations and expressed their views on whether medical evidence would exist and the rapidity of healing.

Appellant objected that the questions to Redden and Yoon were improper questions because they were an attempt to qualify the two as expert witnesses in the cases and because their "unsworn testimony" tainted the entire panel by binding them to a specific set of facts. The State argued that the questions were properly designed to show any preconceived notion that the two venirepersons may have had regarding the existence or nonexistence of medical evidence in these types of cases. In fact, after questioning venire persons Redden and Yoon, the prosecutor stated:

> I'm obviously not trying to put any words in anyone's mouth, we are advocates, but I'm not trying a case—trying my case right now, but it must be understood that, in this particular case, we've got one witness, okay, it is very possible that it's a one witness case. Some of you are going to want more than that. Some of you need forensic evidence. Some of you need medical evidence. Some of you need another witness that saw it happen.

The prosecutor went on to question other members of the panel generally and individually concerning their views regarding the requirement of medical evidence in child sexual abuse cases.

■■■■ As a general rule, a trial court is afforded broad discretion in conducting and controlling the voir dire proceeding. *Shipley v. State,* 790 S.W.2d 604, 608 (Tex. Crim.App.1990) (op. on reh'g); *Garza v.*

*State,* 18 S.W.3d 813, 819 (Tex.App.—Fort Worth 2000, pet. ref'd). It is proper to question a juror concerning his or her views on an issue that is applicable to the case. *Shipley,* 790 S.W.2d at 609. Although a party may not bind a juror to a specific set of facts, a prosecutor is entitled to ask a prospective juror whether he or she will require evidence the law does not require for a verdict of guilty. *Garza,* 18 S.W.3d at 820. A conviction for indecency or sexual assault may be affirmed absent any medical evidence and solely on the testimony of the victim. *Rodriguez v. State,* 819 S.W.2d 871, 873–74 (Tex.Crim. App.1991); *Garza,* 18 S.W.3d at 820. Accordingly, we conclude the trial court did not abuse its discretion by overruling appellant's objections to the prosecutor's questions to Redden and Yoon and by overruling appellant's motion to quash the entire venire.

■■■■ Even assuming the questions to Redden and Yoon were improper, appellant has failed to demonstrate that he was harmed as a result of the trial court's denial of his motion to quash the venire. *See Callins v. State,* 780 S.W.2d 176, 188 (Tex.Crim.App.1986), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990). Appellant argues that "[t]he harm is that the jury effectively considers unsworn information that is not subject to cross-examination" and that the presence of this additional unsworn testimony "had to substantially sway the jury." However, he points to no place in the record to show that other venirepersons were influenced to his prejudice by Redden's and Yoon's answers. *See id.* Accordingly, we overrule appellant's first issue.

### JURY ARGUMENT

In appellant's second issue, he contends the trial court erred by overruling his objection to the prosecutor's improper jury

argument during the punishment phase of trial. He complains of the following rebuttal argument:

I guess every prosecutor has a case that they hope that they can stand up and they can make this just wonderful and great argument and you can come back with a life sentence.

If I ever in my career have one of those cases, I hope this is it. I hope I can stand up here and convince you that the life sentence is a correct sentence. And let me give a few reasons why. One of the reasons, you don't get to know T.H. and A.H. like we do. You don't get to know these little girls. You get a few minutes of them sitting up here. You don't get to know them like we do. You don't get to know them like other people do. You don't get to know and feel and see what sweet and wonderful girls they really are.

Appellant objected that the argument was outside the record, but the trial court overruled his objection. On appeal, appellant reiterates his complaint and contends he was harmed because the identity of the victim in a sexual assault case is important and "[w]hether the victim was Shirley Temple or a foul-mouthed, embittered, aged prostitute makes a difference" to the jury when determining punishment in such a case. He claims the prosecutor was "clearly trying to push A.H. and T.H. into the Shirley Temple category" to support the State's position that the offenses merited life sentences.

■ To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State,* 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126

L.Ed.2d 62 (1993); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973).

■ We agree with appellant that the complained of argument does not fall within one of the permissible areas of jury argument and was clearly outside the record, but we cannot conclude the prosecutor's characterization of A.H. and T.H. as "sweet" and "wonderful" affected a substantial right of appellant's. *See* Tex. R.App. P. 44.2(b); *Martinez v. State,* 17 S.W.3d 677, 692–93 (Tex.Crim.App.2000) (holding improper argument concerning matters outside record is nonconstitutional error); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex.App.—Fort Worth 1998, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). We do not consider the argument particularly extreme or even germane to the jury's determination of punishment given the age of the child victims in these cases and the nature of the offenses. We overrule appellant's second issue.

### JURY CHARGE ERROR

In appellant's third and fourth issues, he contends he was improperly convicted of both the greater offense of aggravated sexual assault and the lesser included offense of indecency by contact in each case. At the close of all the evidence in the guilt/innocence phase, appellant moved the trial court to require the State to make an election as to which offense it intended to seek a conviction. The trial court denied appellant's request.

Appellant complains that the jury charge in each case authorized the jury to convict him of both aggravated sexual assault and indecency with a child, instead of one or the other. The issue then is wheth-

er the evidence justified the trial court in submitting instructions that would permit the jury to convict and sentence appellant both for committing aggravated sexual assault and for committing indecency with a child in each instance—i.e., whether the evidence shows appellant committed two separate offenses against each child. *Ochoa v. State,* 982 S.W.2d 904, 907–08 (Tex.Crim.App.1998).

■■■ At trial, A.H. described one instance where appellant touched her "winkie" or "private part" with his hands and put his finger in her "private part." She told medical personnel who conducted her sexual assault exam that appellant "did it with my winkie two times." This is evidence that appellant committed more than one sexual offense with A.H. and that on at least one of those occasions digital penetration occurred. Thus, the trial court was justified in including both offenses in the charge.

Similarly, T.H. recalled one occasion in appellant's room when he put his penis on her "privates" and touched the outside of her "privates" with his finger. Although the two acts in T.H.'s case may have been committed during the same occurrence, appellant's touching of T.H.'s genitals with his finger was a separate and distinct criminal act from contacting her sexual organ with his penis. *See Hutchins v. State,* 992 S.W.2d 629, 633 (Tex.App.—Austin 1999, pet. ref'd, untimely filed); *see also Murray v. State,* 24 S.W.3d 881, 889 (Tex.App.—Waco 2000, pet. ref'd); *DeMoss v. State,* 12 S.W.3d 553, 560 (Tex. App.—San Antonio 1999, pet. ref'd). Because appellant's conviction for aggravated sexual assault was not based on the same conduct underlying his conviction for indecency, the evidence was sufficient to show that more than one offense was committed by appellant with T.H., and submission of both aggravated sexual assault and inde-

cency was proper. *See Beltran v. State,* 30 S.W.3d 532, 534 (Tex.App.—San Antonio 2000, no pet.); *Hutchins,* 992 S.W.2d at 633. We overrule appellant's third and fourth issues.

In his fifth and sixth issues, appellant contends the trial court erred by submitting a charge that allowed the jury to convict him on less than a unanimous verdict in A.H.'s case when the evidence showed two acts constituting aggravated sexual assault or, in the alternative, two acts constituting indecency with a child. Similarly, in his seventh issue, he contends the trial court erred by submitting a charge that allowed the jury to convict him on less than a unanimous verdict when the evidence showed multiple acts constituting indecency with a child in T.H.'s case.

Appellant argues that in A.H.'s case the evidence suggests there were two incidents, thus the State should have been required to elect upon which offense it wished to seek a conviction. "Otherwise, the jury could come to a nonunanimous verdict, with some jurors believing beyond a reasonable doubt that the defendant committed the first offense but not the second offense ... while other jurors believed beyond a reasonable doubt the defendant committed the second offense but not the first offense." Appellant relies on *Francis v. State,* 36 S.W.3d 121, 125 (Tex. Crim.App.2000) (op. on reh'g), in which the court of criminal appeals held that the jury unanimity requirement was violated by disjunctive submission of two separate offenses occurring on different occasions.

In *Francis,* the defendant was charged with one count of indecency with a child. *Id.* at 122. The State proved four acts of indecency, each of which occurred at a different time and date, and it elected to proceed on two of those acts, one involving the touching of the victim's breasts and one involving the touching of the victim's

genitals. *Id.* The defendant requested that the State be required to elect between the two different acts, but the trial court denied the request, allowing a conviction on a finding that the defendant engaged in sexual contact by touching "the breast *or* genitals of [the] victim." *Id.* The court concluded that submission of two separate offenses in the disjunctive was error because it was conceivable that six members of the jury convicted the defendant on the breast-touching offense and six members convicted him on the genital-touching offense. *Id.* at 125.

■ Unlike *Francis*, in the instant cases, appellant was charged in two separate counts with two separate and distinct offenses in each case. In addition, the jury was not charged in the disjunctive, but was required to reach a unanimous verdict as to each count. Appellant's reliance upon *Francis* is therefore misplaced. We overrule appellant's fifth, sixth, and seventh issues.

### HEARSAY EVIDENCE

In his eighth issue, appellant contends the trial court erred in admitting the outcry testimony of Peggy Roy, the girls' foster mother, without first conducting a hearing in compliance with article 38.072 of the code of criminal procedure. Article 38.072 provides an exception to the hearsay rule for an out-of-court statement made by a child abuse victim to the first adult person describing an alleged offense. *See* Tex.Code Crim. Proc. Ann. art. 38.072, § 2(a) (Vernon Supp.2002). Such a statement is not inadmissible under the hearsay rule if (1) the State provides timely notice to the defendant of its intention to introduce an outcry statement, (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement, and

(3) the child testifies or is available to testify at trial. *Id.* § 2(b)(1)–(3).

The State provided timely notice to appellant that it intended to call Roy as an outcry witness and that she would testify concerning the telephone conversation she monitored between T.H. and T.H.'s biological mother, Chiquita, in May 1999. During the conversation, T.H. told Chiquita that she was touched inappropriately "between her legs" by a man named "Steve." After the telephone conversation ended, Roy questioned T.H. further and obtained more details about the incident. At trial, appellant objected to Roy's testimony recounting the telephone conversation on general hearsay grounds, and he requested a hearing on the admissibility of the testimony outside the presence of the jury. After a conference at the bench, the trial court overruled appellant's objection without conducting a hearing outside the jury's presence.

■ The requirements of article 38.072 are mandatory, and, although appellant did not object to Roy's testimony on the basis of article 38.072, we assume his objection and request for a hearing, taken in context, sufficiently apprised the trial court of his complaint. *See Lankston v. State*, 827 S.W.2d 907, 911 (Tex.Crim.App.1992); *Long v. State*, 800 S.W.2d 545, 547–48 (Tex.Crim.App.1990). Thus, the trial court abused its discretion by admitting Roy's testimony about T.H.'s outcry without first conducting a hearing on the reliability of the statement. *See Long*, 800 S.W.2d at 548; *see also Dorado v. State*, 843 S.W.2d 37, 38 (Tex.Crim.App.1992). Nevertheless, we determine appellant suffered no harm or prejudice in light of the fact that T.H. testified at trial, without objection, concerning the details of appellant's sexual misconduct with her and the fact that she first told her mother of the abuse over the telephone with Roy on the other line. *See*

TEX.R.APP. P. 44.2(b); *Nelson v. State*, 893 S.W.2d 699, 703–04 (Tex.App.—El Paso 1995, no pet.); *Lankston v. State*, 841 S.W.2d 943, 944–46 (Tex.App.—Waco 1992, pet. ref'd). We overrule appellant's eighth issue.

We affirm the trial court's judgments.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting on rehearing.

I would grant Appellant Steven Edward Bottenfield's motion for rehearing. I withdraw my March 14, 2002 dissenting opinion and substitute the following.

In cause number 0746178D, I must respectfully dissent to the majority's holding that the evidence showed two distinct sex acts committed by Appellant against A.H.: aggravated sexual assault by penetrating A.H.'s female sexual organ with his finger and indecency with a child by touching A.H.'s genitals with his hand. I also respectfully dissent to the majority's holding that the trial court did not err in allowing the jury to find that Appellant committed two distinct offenses against T.H. in cause number 0746179D.

### A.H.

The record reflects that on a single occasion, Appellant removed A.H.'s clothes and touched her inside her "privates." Specifically, A.H. testified as follows:

Q. [State] Did something happen in that bedroom?

A. **Yes.**

Q. And what happened?

A. **Steve touched me in a bad way.**

Q. And when you say in a bad way, was it a bad touch?

A. **Yes.**

Q. And where did he touch you . . .?

A. **On my private parts.**

Q. And were your clothes on or off?

A. **Off.**

Q. And who took your clothes off?

A. **Steve.**

Q. Were there doors in that bedroom?

A. **Yes.**

Q. Were those doors open or closed?

A. **Closed.**

Q. And in that bedroom, . . . you didn't have any clothes on, what happened then?

A. **He—He took them off and touched me in a bad way.**

Q. And where did he touch you?

A. **On my private parts.**

Q. And what did he touch you with?

A. **His hands.**

Q. Okay. And were you standing up or sitting down?

A. **Standing up.**

Q. And was he standing up or sitting down?

A. **Yes.**

Q. Which one, was he standing up or sitting down?

A. **Standing.**

Q. Okay. And did he have all of his clothes on?

A. **Yes.**

Q. Okay. And when he touched you in your private, what did you do?

A. **I went out the door.**

Q. Okay. Did you get your clothes first?

A. **Yes.**

Q. Who put your clothes on?

A. **I did.**

Q. Did you say anything to—to Steve?

A. **No.**

Q. How did it make you feel when he touched you?

A. Mad.

Q. Did he touch you on the outside of your privates or the inside?

A. **Inside.**

Q. And what did that feel like?

A. **Bad.**

Q. Did it hurt or not?

A. **It hurt.**

Q. And did this last just a real short time or a long time?

A. **Short time.**

Q. And did he use his hand or his finger?

A. **Finger.**

Q. And what did he do with his finger, can you remember?

A. **He put it up my private part.**

Q. And did he say anything to you?

A. **Yes.**

Q. What did he tell you?

A. **Keep it a secret.**

Q. And did you keep it a secret?

A. **No.** [Emphasis added.]

A.H. testified that she immediately told her father, who ordered Appellant out of the house. The indictment alleged a single date, September 30, 1997, for both the sexual assault and indecency counts. A.H. was born on November 10, 1993.

Dr. Leah Lamb performed the physical examination of A.H. on July 12, 1999. Dr. Lamb, however, did not testify at trial. Rather, Virginia Caldwell, a registered nurse and sexual assault nurse examiner at Cook Children's Medical Center, testified regarding Dr. Lamb's examination of A.H. Although she did not assist with the exam, Caldwell testified at trial from A.H.'s medical records, which were never admitted into evidence. While Caldwell testified that the records were completed at or near the time of the examination, she revealed no basis for this statement. Caldwell stated that Dr. Lamb took a "his-

tory" or a "narrative" for A.H. When asked who actually writes down the narrative, Caldwell responded, "The doctor does, or the examiner."

The written narrative for A.H. contains the following quotation: "This guy, Steve, he stuck his finger up my winkie ... I was five years old when he did it.... Steve did it with my winkie two times." Nothing in the record, however, shows who provided this narrative. It is, therefore, unclear whether A.H. provided the narrative to Dr. Lamb, the examiner, the CPS case worker, the child psychologist, a police officer, or an interviewer for the district attorney's office. Indeed, it is not clear from the record whether the narrative was provided by A.H. at all. The record does not support the majority's assertion that A.H. made the statements contained in the narrative to "medical personnel who conducted her sexual assault exam."

Although she was not present for A.H.'s examination, Caldwell described the process by which she obtains a child's history in the course of conducting an examination:

Q. [State] Do many of them come right out and tell you what happened or do you have to pry a little bit with some of them?

A. **Some are—are not as—don't as easily talk, we spend a lot of time establishing rapport with the children.... Some children are easier to talk to than others. Some children will talk to one person whereas they might not talk to another. It may be how you word questions, it's just presentation.... So it varies how children are going to-going to talk to you or not.**

Q. Well, generally, how are younger children at giving—staying on the subject and giving specific details?

A. Well, you have to look at the developmental level of your children. In your pre-school children, they may be more distractable, you can't ask them specific things about times, and when you ask them about something that happened, they can usually only remember a core element of something, they can't necessarily describe something ... from A to Z. So, they may can [sic] tell you something about an event, but you may have to listen—ask questions to elicit more information that you need. And when you get into the school age area, then they can give you a little more peripheral detail without prompting, so you have to know your developmental level of your children. [Emphasis added.]

Caldwell also testified that she obtains a history from the care giver or a parent before speaking with the child. Caldwell did not state the source of the information contained in A.H.'s history. Nor was there any suggestion that the examination on A.H. was conducted for the purpose of medical diagnosis or treatment. It was done to seek evidence of a crime pursuant to the Tarrant County Physical and Sexual Abuse Medical Protocol.

I have examined the entire record in this case and can find no evidence that the separate offenses of indecency by contact and sexual assault occurred with respect to A.H. The majority concludes that because A.H. testified that Appellant touched her *on* her "private parts" with his *hands*, she was describing the indecency offense. As I understand the majority's reasoning, because A.H. stated that Appellant touched her "private part" with his hands and put his finger in her "private part," this is evidence that Appellant committed more than one sexual offense. But when asked by the prosecutor to clarify where Appellant touched her, "on the outside of [her] privates or the inside," A.H. replied, "Inside." When asked if he used his hand or his finger, A.H. responded, "Finger." A.H. stated that Appellant "put [his finger] up my private part."

The majority also relies on the narrative about which Caldwell testified over the defense's objection that the medical records had not been admitted into evidence. The narrative contains the statement, "Steve did it with my winkie two times." Even if this statement is considered probative of the offenses alleged in the indictment, it can only be considered as referring to two instances of penetration, or moving the finger into the genitals, out, and into the genitals again. The only conduct referenced in the narrative is that Appellant "stuck his finger up my winkie." There is no evidence of fondling only.

A person commits sexual assault if there is any penetration of the female sexual organ.[1] While indecency by contact may be a lesser included offense of sexual assault,[2] neither the State nor the defendant is entitled to a charge on a lesser included offense unless there is evidence that if the defendant is guilty, he is guilty of the lesser offense only.[3] That is, there must be some evidence from which a rational jury could acquit the defendant on the greater offense while convicting him of the lesser included offense.[4]

I would hold that the trial court erred in allowing the jury to convict Appellant for

---

1. Tex. Penal Code Ann § 22.011(a)(1)(A) (Vernon Supp.2002).

2. *See Ochoa v. State*, 982 S.W.2d 904, 908 (Tex.Crim.App.1998).

3. *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim.App.2001); *Moore v. State*, 969 S.W.2d 4, 8 (Tex.Crim.App.1998).

4. *Moore*, 969 S.W.2d at 8.

two separate offenses against A.H., indecency with a child and aggravated sexual assault. Accordingly, I would vacate Appellant's conviction for indecency in the case involving A.H. and affirm his conviction for aggravated sexual assault.

### T.H.

In the case involving T.H., the jury was erroneously allowed to convict Appellant of both an offense and a lesser included offense. The jury received no instruction precluding this improper result. Appellant raised this charge error, but the majority chose not to address it specifically. The majority concludes that "[b]ecause appellant's conviction for aggravated sexual assault was not based on the same conduct underlying his conviction for indecency, the evidence was sufficient to show that more than one offense was committed by appellant with T.H., and submission of both aggravated sexual assault and indecency was proper." The problem, however, is that there is no evidence that the convictions were not based on the same conduct.

The indictment in this case contained two live counts at trial. Count two alleged aggravated sexual assault by causing the child's genitals to contact Appellant's penis. The pleading is very specific and the jury charge tracked the indictment exactly. There is no confusion concerning what the jury was required to find in order to convict Appellant of aggravated sexual assault. The indecency allegation contained

in count three, however, is another matter, and that is where the charge error lies.

The indictment alleged indecency by touching. While the majority correctly holds that "appellant's touching of T.H.'s genitals with his finger was a separate and distinct criminal act from contacting her sexual organ with his penis," the indecency count did not allege that Appellant touched T.H.'s genitals with his fingers. The indecency count did not limit the manner and means of touching T.H.'s genitals in any way. Consequently, proof of contact between Appellant's penis and T.H.'s genitals satisfied the State's burden to support a conviction for indecency as well as for aggravated sexual assault. The intent to arouse and gratify sexual desire is implicit in the fact that the object Appellant used to contact T.H.'s genitals was his penis. Thus, as alleged in the indictment, indecency with a child is a lesser included offense of aggravated sexual assault.[5]

The trial court should have required the jury to acquit Appellant of aggravated sexual assault before considering the lesser included offense of indecency by contact. Alternatively, the trial court should have required the State to elect as Appellant requested. The trial judge could not lawfully submit both offenses given the vague, albeit sufficient, indictment.[6] Additionally, the trial judge could not have limited the jury's consideration on the indecency charge to touching with some object other than Appellant's penis.[7] Although there

**5.** *See Ochoa,* 982 S.W.2d at 908.

**6.** *See Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997) ("[Legal] sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily re-

strict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.... [This] standard ... ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime....").

**7.** *See Gollihar v. State,* 46 S.W.3d 243, 255 n. 20 (Tex.Crim.App.2001) ("[T]he hypothetically correct charge may not modify the indictment

was evidence of Appellant's touching T.H.'s genitals with his hand, neither the indictment nor the jury charge required the jury to find that specific type of touching in order to convict Appellant of indecency.

Because the charge did not limit the jury's consideration of the manner and method of touching, the jury that had found Appellant guilty of aggravated sexual assault by causing contact between his penis and T.H.'s genitals would have been compelled to reach a guilty verdict on the indecency count; that is, indecency by contact necessarily occurred when Appellant touched T.H.'s genitals with his penis. That is why indecency is a lesser included offense of aggravated sexual assault in this case, under these facts and this general indictment.

For these reasons, I would hold that both convictions cannot stand. Because the State would probably elect the greater offense, I would reform the judgment in cause number 0746179D to sustain Appellant's conviction for aggravated sexual assault and vacate his conviction and sentence for the lesser included offense of indecency with a child by contact.[8]

allegations in such a way as to allege 'an offense different from the offense alleged in the indictment.' "); *Malik,* 953 S.W.2d at 240 (the hypothetically correct jury charge may not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability beyond the limitations authorized by the indictment).

8. *See Ochoa,* 982 S.W.2d at 908; *Landers v. State,* 957 S.W.2d 558, 560–61 (Tex.Crim.App. 1997) (holding that proper remedy for double jeopardy violation occurring when defendant is convicted in single criminal action of two offenses that are the "same" for double jeopardy purposes is for appellate court to retain conviction carrying most serious punishment and vacate conviction and punishment for remaining offense).