In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00094-CR


______________________________




ANTWONE JOHNERAL SIMMONS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Fourth Judicial District Court


 Rusk County, Texas


Trial Court No. CR06-250




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Antwone Johneral Simmons fled and disappeared into the woods as soon as Trooper Jason
Bundy asked him to step out of the passenger side of a pulled-over maroon Buick. Minutes later,
Simmons reappeared, surrendered, and was apprehended. After arresting Simmons for evading
police, Bundy surveyed the woods and located two clear plastic bags containing .06 grams of
cocaine. Simmons was convicted by a jury for possession of less than one gram of cocaine,
sentenced to two years' confinement in a state jail facility, and assessed a $2,500.00 fine. On appeal,
Simmons alleges the evidence was legally and factually insufficient to support his conviction. Based
on all the circumstances present at the time of Simmons' flight and arrest, we affirm the judgment
of the trial court. 

 Simmons was the lone passenger in the maroon Buick, which had been stopped by Bundy
for following another vehicle too closely. Bundy asked the Buick's driver to step out and noticed she
was extremely nervous, a quality she stated was due to a diet pill ingested earlier that morning. The
driver told Bundy she was transporting Simmons, who intended to purchase a used car in the
neighborhood. While Bundy questioned the driver about whether she had anything illegal in the car,
another officer, who had recently arrived, approached Simmons and began to question him. After
the driver told Bundy that nothing illegal was in the car, Bundy obtained consent to search the
vehicle. Bundy asked Simmons to step out of the vehicle and noticed a large, "colostomy" sized
bulge underneath Simmons' baggy pants. As soon as Simmons stepped out of the car, he ran into
the nearby woods. Bundy did not have the opportunity to pat Simmons down before he fled. While
Bundy "felt that it was drugs [Simmons] had, [he] had no way of knowing." The other officer on the
scene stated he did not see a bulge in Simmons' pants.

 Nevertheless, Bundy radioed for canine-unit assistance and asked for other officers to pursue
Simmons while he further detained the driver. Bundy cited the driver for drug paraphernalia after
finding marihuana residue, rolling papers, and marihuana scissors in the bottom of the driver's purse. 
Next, a nearby homeowner reported that she saw a "black man . . . walking out of the woods from
their yard." Bundy went to the road beside the homeowner's house, quickly spotted Simmons, and
arrested him. A maximum of sixteen minutes had passed between Simmons' flight and his arrest. 
After recording that Simmons was carrying $862.00 in cash, which Simmons claimed was money
for the car's purchase, Bundy took Simmons to jail. Simmons maintained that he fled because he
was on parole and did not know what would happen. 

 After Simmons was taken to jail, the canine unit arrived at the scene of the traffic stop and
alerted while in the backseat on the passenger side. An examination of the backseat revealed what
appeared to be marihuana residue. Bundy then began his own search of the woods. He went to the
residence from which Simmons' location was reported and walked into the woods until he saw a
creek. After deciding that Simmons had not crossed the creek, Bundy started walking back and
noticed fresh footprints that led to a woodpile on a clear-cut piece of property where a new house
was being built. Although Bundy acknowledged that "there had been a couple more people back in
that portion of the woods" and that he could not tell if the footprints belonged to Simmons, he felt
it was possible that Simmons had traveled the 100 yards from the residence to the woodpile. Bundy
looked into the woodpile and found two one-ounce clear plastic bags that were torn open with their
contents apparently dumped out. The bags still contained some powder residue that looked and
smelled like cocaine. After the bags were found, the canine unit was sent into the woods, alerted on
the same woodpile, and found only an amount of cocaine that was described as a "small spot." At
trial, the chemist testified that one of the bags contained .06 grams of cocaine. 

 When conducting a legal sufficiency analysis, we review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could find the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979);
Clewis v. State, 922 S.W.2d 126, 132-33 (Tex. Crim. App. 1996). This standard serves as a tool to
determine whether there is a fact issue at all. Clewis, 922 S.W.2d at 133. In other words, if the
evidence is insufficient under the Jackson standard, we must render a judgment of acquittal. Id. 
However, if the Jackson standard is met, we may not sit as the thirteenth juror reevaluating the
weight and credibility of the evidence. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999). Instead, we must give full play to the fact-finder's responsibility to weigh the evidence,
resolve conflicts in the testimony, and draw reasonable inferences from basic facts. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis, 922 S.W.2d at 133; Bottenfield v. State, 77 S.W.3d
349, 354 (Tex. App.--Fort Worth 2002, pet. ref'd) (citing Jackson, 443 U.S. at 319). 

 Because factual sufficiency is an issue of fact, we are not free to re-weigh the evidence and
set aside a jury verdict merely because we feel a different result is more reasonable. Clewis, 922
S.W.2d at 135. Instead, we give due deference to the jury's determinations and will find the evidence
factually insufficient only when necessary to prevent manifest injustice. Johnson, 23 S.W.3d at 8-9,
12; Clewis, 922 S.W.2d at 133, 135. Thus, we view the evidence in a neutral light when assessing
factual sufficiency and determine whether the proof of guilt is so obviously weak as to undermine
confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be
clearly wrong and unjust. Johnson, 23 S.W.3d at 11; Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997); Harris v. State, 133 S.W.3d 760, 764 (Tex. App.--Texarkana 2004, pet. ref'd). 
If we find the evidence factually insufficient, we must vacate the conviction and remand the cause
for a new trial in order to avoid substituting our own judgment for that of the jury. Clewis, 922
S.W.2d at 133-35. 

 At trial, the State was required to prove that Simmons exercised control, custody,
management, or care over the cocaine and that he knew the matter possessed was contraband. See
Evans v. State, 202 S.W.3d 158, 161 (2006); see also Tex. Penal Code Ann. § 1.07(a)(39) (Vernon
2003) (possession defined). By itself, mere presence at a location where drugs are found is not
enough evidence to exhaust the State's burden. Id. at 162. However, presence or proximity, when
combined with other direct or circumstantial evidence, may be sufficient to establish control,
management, custody, or care beyond a reasonable doubt if the proof amounts to more than a strong
suspicion or probability. Id.; Lassaint v. State, 79 S.W.3d 736, 741 (Tex. App.--Corpus Christi
2002, no pet.).

 To discern whether Simmons' connection with the cocaine was more than fortuitous, we will
use the affirmative links test adopted by Texas courts to protect the innocent bystander from
conviction merely because of their unfortunate proximity to someone else's drugs. Evans, 202
S.W.3d at 161-62. The recognized links are many:

(1) the defendant's presence when a search is conducted; (2) whether the contraband
was in plain view; (3) the defendant's proximity to and the accessibility of the
narcotic; (4) whether the defendant was under the influence of narcotics when
arrested; (5) whether the defendant possessed other contraband or narcotics when
arrested;  (6)  whether  the  defendant  made  incriminating  statements  when
arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made
furtive gestures; (9) whether there was an odor of contraband; (10) whether other
contraband or drug paraphernalia were present; (11) whether the defendant owned
or had the right to possess the place where the drugs were found; (12) whether the
place where the drugs were found was enclosed; (13) whether the defendant was
found with a large amount of cash; and (14) whether the conduct of the defendant
indicated a consciousness of guilt; (15) the accused made incriminating statements
connecting himself or herself to the contraband; (16) the quantity of the contraband;
and (17) the accused was observed in a suspicious area under suspicious
circumstances. 

Id. at 166; Muckleroy v. State, 206 S.W.3d 746, 748 n.4 (Tex. App.--Texarkana 2006, pet. ref'd);

Olivarez v. State, 171 S.W.3d 283, 291 (Tex. App.--Houston [14th Dist.] 2005, no pet.); Kyte v.
State, 944 S.W.2d 29, 31 (Tex. App.--Texarkana 1997, no pet.). This nonexhaustive list is not a
litmus test, and it is the logical force of all of the evidence that guides our determination. Olivarez,
171 S.W.3d at 291. In other words, the number of affirmative links present is not as important as
the degree to which they tend to link the defendant to the controlled substance. Taylor v. State, 106
S.W.3d 827, 831 (Tex. App.--Dallas 2003, no pet.); Williams v. State, 906 S.W.2d 58, 65 (Tex.
App.--Tyler 1995, pet. ref'd); Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin 1991,
pet. ref'd). 

 The analysis of several links favors Simmons. According to Bundy's testimony at trial, there
was no contraband in plain view. Also, there was no evidence that Simmons was under the influence
of, or possessed, contraband or narcotics when arrested. He did not make incriminating statements
when arrested and did not have the right to possess the woodpile or car where the cocaine and
marihuana paraphernalia were found. Additionally, the small amount of cocaine that Bundy located
did not comport with the large "colostomy"-sized bulge seen underneath Simmons' baggy pants.

 However, although Simmons was not present when Bundy searched the woods, he had
previously fled into the woods where the cocaine was recovered. As for proximity, Bundy testified
that the woodpile, which he found while walking and trying to retrace Simmons' steps, was about
100 yards away from the residence where Simmons was found. Bundy stated he believed the fresh
footprints around the woodpile could have been made by Simmons, who was in the woods for a
maximum of sixteen minutes. The canine unit picked up an odor of contraband in the car and in the
woodpile. The driver of the vehicle was cited for marihuana paraphernalia found in her purse, and
a substance that appeared to be marihuana residue was later found in the backseat of the vehicle.
Also, Simmons was found with $862.00 in cash, which the jury could have determined was a large
amount. Obviously telling is the fact that Simmons fled immediately upon being asked to step
outside of the vehicle. While flight or mere presence at a scene where drugs are found are alone
insufficient by themselves to support a guilty verdict, they are circumstances from which an
inference of guilt can be drawn by a fact-finder. Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim.
App. 1981) (op. on reh'g); Hill v. State, 161 S.W.3d 771, 776 (Tex. App.--Beaumont 2005, no pet.);
Segura v. State, 850 S.W.2d 681, 684 (Tex. App.--Corpus Christi 1993, no pet.). The jury could
have determined that Simmons' flight indicated a consciousness of guilt and that Simmons knew that
matter possessed by him was contraband.

 Viewing these factors in the light most favorable to the verdict, we find the evidence created
fact issues as to whether Simmons had control, management, custody, or care of the cocaine Bundy
located and whether Simmons knew the substance was contraband. Since it was within the purview
of the jury to weigh credibility and conflicts in the evidence, it could rationally find the essential
elements for possession of less than one gram of cocaine beyond a reasonable doubt. Thus, we
cannot sit as the thirteenth juror and disturb the jury's findings unless the evidence when viewed in
a neutral light was greatly outweighed by contrary proof so as to be clearly wrong and unjust, or was
so obviously weak that confidence in the verdict is undermined. Here, the evidence of Simmons'
guilt including his flight, proximity to the cocaine, odor of contraband, paraphernalia that was found
on the driver, and the amount of cash carried by Simmons, is not greatly outweighed by the links
tending to disprove guilt, such that the jury's verdict is undermined or can be considered wrong or
unjust. The evidence supporting Simmons' conviction was both legally and factually sufficient.

 Based on all the circumstances surrounding Simmons' arrest, we find the evidence was
legally and factually sufficient to show Simmons had control, management, custody, or care over the
cocaine found in the woods. We also find that the jury was not clearly wrong or unjust when it found
that Simmons knew the matter possessed was contraband. Therefore, we affirm the judgment of the
trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 16, 2008

Date Decided: December 16, 2008


Do Not Publish



 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00098-CV

                                                ______________________________

 

 

 

                               IN THE INTEREST OF A.T.G., A CHILD

 

 

                                                                                                  


 

 

                                       On Appeal from the 307th
Judicial District Court

                                                             Gregg County, Texas

                                                     Trial Court No. 2010-1011-DR

 

                                                   
                                               

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            The
Texas Department of Family and Protective Services, the sole appellant in this
case, has filed a motion seeking to dismiss its appeal.  Pursuant to Rule 42.1 of the Texas Rules of
Appellate Procedure, its motion is granted. 
Tex. R. App. P. 42.1.

            We
dismiss the appeal.

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date
Submitted:          October 18, 2011

Date Decided:             October 19, 2011