

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00056-CR

_____

ERIC RASHAD RUTHERFORD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 37095-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Eric Rashad Rutherford was convicted by a jury of possessing between four and 200 grams of cocaine with intent to deliver. He was sentenced to ten years' imprisonment in the Texas Department of Criminal Justice–Institutional Division and ordered to pay a $5,000.00 fine. Rutherford appeals on the grounds that the evidence was legally and factually insufficient to support the judgment. We affirm.

## I.       STANDARD OF REVIEW

The standards of review do not change when the case involves circumstantial, rather than direct evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A case based on circumstantial evidence is built brick by brick. In other words, "[e]ach fact need not point directly and independently to the guilt of the appellant." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). If a conclusion is warranted by the combined cumulative force of all incriminating circumstances, the evidence is sufficient. *Id.*

### A.       Legal Sufficiency

A separate analysis is required when analyzing legal and factual sufficiency. The requirement of legal sufficiency confirms that a fact question was raised by the evidence. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). If the evidence in this case was insufficient to raise an issue of Rutherford's guilt, it should not have been submitted for the jury's resolution. *Id.* When conducting this analysis, we review all of the evidence in the light most favorable to the verdict and

determine whether any rational jury could find the essential elements of possession of cocaine with intent to deliver as charged by the indictment beyond a reasonable doubt. *Hooper*, 214 S.W.3d at 13; *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Clewis*, 922 S.W.2d at 132–33; *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

Once we determine the evidence raised issues for the jury's resolution, we will not sit as the thirteenth juror re-evaluating the weight and credibility of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we give full play to the jury's responsibility to weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic facts. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis*, 922 S.W.2d at 133; *Bottenfield v. State*, 77 S.W.3d 349, 354 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

### B.    Factual Sufficiency

Unlike legal sufficiency review, we examine the evidence in a neutral light when assessing factual sufficiency and determine whether the proof of guilt is obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Johnson*, 23 S.W.3d at 11; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd). A clearly wrong and unjust verdict is

manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

Because factual sufficiency is an issue of fact, we are not free to reweigh the evidence and set aside the verdict merely because we feel a different result is more reasonable. *Clewis*, 922 S.W.2d at 135. Instead, we will only ensure that the jury reached a rational decision and will find the evidence factually insufficient only when necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 8–9, 12; *Clewis*, 922 S.W.2d at 133, 135; *Cuong Quoc Ly v. State*, 273 S.W.3d 778, 783 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993)).

### C.    The Hypothetically Correct Jury Charge

Our analysis of whether the evidence is legally and factually sufficient is measured against the elements of the offense with the same kind of analysis as that applied in the test for a hypothetically correct jury charge for the case.[1] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*,

---

[1]*Malik* controls "*even in the absence of alleged jury charge error.*" *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001).

953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. *Grotti*, 273 S.W.3d at 281.

Rutherford was in possession of cocaine with intent to deliver as charged in the indictment if he 1) knowingly; 2) delivered or possessed with intent to deliver; 3) four grams or more but less than 200 grams; 4) of cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (Vernon Supp. 2009). Rutherford's only contention is that there was no evidence indicating he was the one who knowingly possessed the cocaine. With the elements of the hypothetically correct jury charge in mind, we turn to the issue of sufficiency of the evidence.

## II. THE EVIDENCE

An informant pointed out a house to the police located at 8507 West Goforth Road as a place where drugs were purchased. Although the informant could only remember one name–Rutherford's brother Broderick–he told the police the house was occupied by a large black male with dreadlocks, a large heavy-set black male around twenty-five years of age, a skinny black male, a light-skinned black male, and a woman. The large males were described as over six feet tall.

The police placed the house under surveillance and noticed "there were so many people coming and going from the residence . . . and not staying long." They obtained a warrant for the location and coordinated with the SWAT team to execute it. Rutherford, a twenty-two-year-old large black male standing six feet three inches tall, his brother Reginald, also a large black male, Curtis Chattam, a light-skinned black male, and a female, Lottie Roberson, were in the home when the

5

SWAT team used a battering ram to break down the door. Rutherford "heard a loud bang" and "ran to the back and laid on the floor" in the restroom. When the police entered, they noticed "the drug paraphernalia, the marijuana grinder and scales [were] just out in plain view around the console of the TV." An odor of marihuana permeated the residence. There was a rectangular black case on the kitchen floor containing "baggies" of marihuana, some of which contained cocaine residue. A gun was found, along with a large amount of money piled on the living room floor. On top of the kitchen cabinets, officers found a sandwich bag filled with a large amount of crack cocaine in "cookie form." On the bottom shelf in the bathroom where Rutherford was found, officers recovered a black bag with a "Kia" vehicle emblem containing a large amount of cocaine as well. Rutherford had driven his girlfriend's Kia to the house that day. In his pockets, Rutherford had two bags of marihuana and $1,265.00 in cash. He had no reported source of income. Also, his brother Broderick was on disability and his brother Reginald was unemployed. A total of 71.52 grams of cocaine was recovered from the house.

At trial, Rutherford took the stand to testify that the cocaine was not his. His girlfriend said she gave Rutherford $1,300.00 of her tax return money for safekeeping. Rutherford admitted that he used some of the money to buy the marihuana found in his pockets. He told the jury the house belonged to Roberson, a family friend, and that he was visiting his brothers, one of whom was living there at the time. Rutherford recalled the group was smoking "weed" and playing cards in the dining room. Afterward, they went to the living room, "[Rutherford] rolled [his] weed," and was going to

the restroom when he heard the SWAT team enter.  Although he had to traverse through the kitchen where the black case containing marihuana was found on the floor in order to get to the restroom, Rutherford denied seeing the black case.  He claimed that the black Kia bag, found in the restroom where he was located, was not his and that he did not know to whom the cocaine belonged.  Chattam claimed the money lying on the living room floor.  Testifying officers stated that there was no cocaine located on anyone, that nothing with Rutherford's name was found in the house, and that they had no knowledge that Rutherford sold cocaine to anyone or that he was present when drugs were sold.

III.    ANALYSIS

The State was required to prove that Rutherford exercised control, custody, management, or care over the cocaine and that he knew the matter possessed was contraband.  TEX. PENAL CODE ANN. § 1.07(a)(39) (Vernon Supp. 2009); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).  By itself, mere presence at a location where drugs are found is not enough evidence to exhaust the State's burden.  *Evans*, 202 S.W.3d at 162.  Along the same line, mere presence does not make Rutherford a party to joint possession even if he knew of the existence of the contraband and had knowledge of an offense.  *See Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982) (possession means more than being where the action is).  However, presence or proximity, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care beyond a reasonable doubt if the proof amounts to more than a strong

7

suspicion or probability. *Evans*, 202 S.W.3d at 161; *Lassaint v. State*, 79 S.W.3d 736, 741 (Tex. App.—Corpus Christi 2002, no pet.).

Since Rutherford was not in exclusive possession of the house, additional independent facts and circumstances must link him to the contraband "in such a way that it can be concluded that the accused had knowledge of the contraband and exercised control over it." *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). The evidence must demonstrate that the link between a defendant and the contraband "generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it." *Id.* In other words, the State must establish that the defendant's connection with the narcotics was more than just fortuitous. *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).

To discern whether Rutherford's connection with the cocaine was more than fortuitous, we will use the links test adopted by Texas courts to protect the innocent bystander from conviction merely because of their unfortunate proximity to someone else's drugs. *Evans*, 202 S.W.3d at 161–62. These links include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other

8

contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; (14) whether the conduct of the defendant indicated a consciousness of guilt; (15) whether the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) whether the accused was observed in a suspicious area under suspicious circumstances. *Id.* at 162 n.12; *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.). This nonexhaustive list is not a litmus test, and it is the logical force of all of the evidence that guides our determination. *Olivarez*, 171 S.W.3d at 291. In other words, the number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.); *Williams v. State*, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

### A.      Evidence at Trial Supported the Verdict

When the SWAT team entered the house, Rutherford admits he ran to and laid down on the floor of the restroom where the black Kia bag, containing a large amount of cocaine, was found. With respect to the black Kia bag, the following links applied:  1) Rutherford was present when the

9

search was conducted; 2) "baggies" containing cocaine residue were in plain view on the kitchen floor; 3) proximity and accessibility were met because the bag was found in the restroom where Rutherford was located when the SWAT team entered the house; 4) Rutherford possessed marihuana when arrested; 5) there was an odor of marihuana in the house; 6) marihuana, grinder, and scales were present; 7) the drugs were found in the house, which is an enclosed space; 8) Rutherford was found with a large amount of cash; 9) the quantity of the contraband was large; and 10) Rutherford was observed in a suspicious area, a house known for the sale of drugs, under suspicious circumstances where contraband and large amounts of cash and a gun were in plain view.

These links raised fact questions for the jury's resolution. We assume the jury resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in the manner supporting the verdict. *King v. State*, 174 S.W.3d 796 (Tex. App.—Corpus Christi 2005, pet. ref'd). Intent to deliver may be inferred from the quantity of drugs possessed and from the manner in which they were packaged. *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997). Here, the large amount of cocaine found in the Kia bag, along with the fact that several "baggies" with cocaine residue were found, indicated intent to deliver.[2] Keeping in mind that the jury was the sole judge of the weight and credibility of the evidence, we find that a rational jury could have found that Rutherford was in knowing possession

[2]Over four grams of cocaine were contained in the Kia bag. It is unclear from the record received by this Court whether 46.48 grams or 25.04 grams were found in the Kia bag. The record shows that one of the two large quantities of cocaine was found in the kitchen and the other in the restroom.

10

with intent to deliver of over four grams of cocaine contained in the black Kia bag. Further, even in reviewing the evidence in a neutral light, we do not find the jury's verdict was clearly wrong, manifestly unjust, biased, or shocking.

Since the evidence was both legally and factually sufficient to establish Rutherford was in possession of four grams or more but less than 200 grams of cocaine, we need not discuss whether Rutherford was in knowing possession of the bag of cocaine found on top of the kitchen cabinets. Rutherford's points of error are overruled.

### B. Modification of Judgment

The Texas Rules of Appellate Procedure give this Court authority to modify judgments sua sponte to correct typographical errors and make the record speak the truth. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Battle v. State,* No. 06-07-00148-CR, 2008 WL 482343, at *3 (Tex. App.—Texarkana Feb. 25, 2008, no pet.) (mem. op., not designated for publication) (modifying judgment to reflect proper statute under which defendant should have been convicted); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi 1982, pet. ref'd).

The trial court's judgment indicates the statute for the offense of which Rutherford was convicted was Section 481.123 of the Texas Health and Safety Code, which is entitled "Defense to Prosecution For Offense Involving Controlled Substance Analogue." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.123 (Vernon Supp. 2009). Our review of the record shows that the correct statute for the offense is Section 481.112(d) of the Texas Health and Safety Code. *See* TEX. HEALTH &

SAFETY CODE ANN. § 481.112(d). Therefore, we hereby modify the judgment to indicate that the statute under which Rutherford was convicted is Section 481.112(d) of the Texas Health and Safety Code.

## IV. CONCLUSION

As modified, we affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     October 15, 2009
Date Decided:       November 5, 2009

Do Not Publish