ACCEPTED
01-14-00809-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/22/2015 4:14:15 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00809-CR

IN THE COURT OF APPEALS

THE FIRST DISTRICT OF TEXAS AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/22/2015 4:14:15 PM
CHRISTOPHER A. PRINE
Clerk

RODYS A. SANCHEZ

*Appellant*

v.

THE STATE OF TEXAS

*Appellee*

On Appeal from Cause Number 1408480
263rd District Court, Harris County, Texas
Honorable Jim Wallace, Judge Presiding

BRIEF FOR APPELLANT

ORAL ARGUMENT REQUESTED

CORY J. ROTH

CORY ROTH LAW OFFICE

4306 YOAKUM BOULEVARD,

SUITE 240

HOUSTON, TEXAS 77006

PHONE: 713-864-3400

FAX: 713-864-3413

COUNSEL FOR APPELLANT

## IDENTITY OF PARTIES AND COUNSEL

TRIAL PROSECUTOR:                      Ms. Tiffany Dupree

                                       Ms. Jamie Felicia

                                       Assistant District Attorneys

                                       Harris County, Texas

                                       1201 Franklin, 6th Floor

                                       Houston, Texas 77002


DEFENSE COUNSEL AT TRIAL:              Mr. Stephen Greenlee

                                       2909 Hillcroft, Suite 560

                                       Houston, Texas 77057


PRESIDING JUDGE:                       Hon. Jim Wallace

                                       263rd District Court

                                       Harris County, Texas

                                       1201 Franklin, 15th Floor

                                       Houston, Texas 77002


COUNSEL FOR APPELLANT ON APPEAL:       Cory J. Roth

                                       Cory Roth Law Office

                                       4306 Yoakum Boulevard,

                                       Suite 240

                                       Houston, Texas 77006

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. 3

INDEX OF AUTHORITIES ........................................................................................... 5

STATEMENT OF THE CASE ......................................................................................... 6

ISSUES PRESENTED ..................................................................................................... 7

I.   Appellant was denied his constitutional due process right to assistance of counsel because Mr. Greenlee failed to review the State's notice the Complainant made potentially false allegations of sexual abuse against other people that were no-billed; failed to request a continuance at three vital junctures; failed to put a vital bench conference on the record; failed to object to the jury charge; and made a punishment argument that mirrored the State's. ................................................................................. 7

II.  Trial court reversibly erred by denying Appellant's request for a jury instruction on the lessor included offense of indecency with a child.  Indecency with a child is a lesser included offense of aggravated sexual assault of a child, and the court's refusal to grant Appellant's request for the instruction denied Appellant constitutional right to fair and impartial trial. ................................................................................ 7

STATEMENT OF FACTS ............................................................................................... 7

SUMMARY OF THE ARGUMENT ............................................................................. 10

ARGUMENT ................................................................................................................ 11

ISSUE ONE .................................................................................................................. 11

Appellant was denied his constitutional due process right to effective assistance of counsel because Mr. Greenlee failed to review the notice provided by the State that the complainant made allegations of sexual abuse that were no-billed; failed to request a continuance at three vital junctures; failed to put a vital bench conference on the record; failed to object to the jury charge; and made a punishment argument that mirrored the State's. ............................................................................................... 11

A.  Standard of Review ............................................................................................. 11

B.  Trial Counsel Was Ineffective ........................................................................... 13

1. Trial counsel's failure to review the State's notice that the Complainant made potentially false allegations of sexual abuse in Montgomery County rendered him ineffective........................................................................................................ 15

2. Trial counsel's failure to request a continuance to determine whether Complainant's allegations of sexual assault in Montgomery County were unsubstantiated rendered him ineffective................................................................ 16

3. Trial counsel's argument at punishment rendered him ineffective................. 24

4. Counsel was ineffective for failing to object to expert testimony at sentencing to State's line of questioning about the best treatment for sex offenders, and expert's statement that violated Appellant's right to not testify, and failing to object to the jury charge............................................................................................ 28

ISSUE TWO ....................................................................................................................... 32

THE TRIAL COURT ERRED IN REFUSING TO INCLUDE A JURY INSTRUCTION FOR THE LESSER INCLUDED OFFENSE OF INCEDENCY WITH A CHILD........................................................................................................... 32

A. Indecency with a child is a lesser included offense of aggravated sexual assault of a child.......................................................................................................... 33

B. There is a question as to whether Appellant penetrated the Complainant's vagina, thus, an indecency with a child instruction would have been proper. ....... 36

C. Refusing to give the jury instruction on indecency with a child harmed appellant, requiring that his conviction be reversed................................................. 40

CONCLUSION ................................................................................................................. 41

PRAYER .............................................................................................................................. 43

CERTIFICATE OF SERVICE ...................................................................................... 43

CERTIFICATE OF COMPLIANCE .......................................................................... 44

# INDEX OF AUTHORITIES

## Cases

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim App. 1984) .......................................... 40

*Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005) ........................................ 12

*Banda v. State*, 890 S.E.2d 42 (Tex. Crim. App. 1994) ............................................ 39

*Barfield v. State*, No. 14-13-0518-CR, (Tex. App.—Houston [14th Dist.] 2015) ........................... 16, 23

*Bingall v. State*, 887 S.W.2d 21 (Tex. Crim. App. 1994) .......................................... 39

*Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002) ............................................. 12

*Bottenfield v. State*, 77 S.W.3d 349 (Tex. App.—Fort Worth) .................................. 34

Cohn v. State, 849 S.W.2d 817 (Tex.Crim.App. 1993) .............................................. 28

*Cunningham v. State*, 726 S.W.2d 151 (Tex. Crim. App. 1987) .................................. 34

*Davis v. Alaska*, 415 U.S. 308 (1974) ............................................................. 18

*DeLeon v. State*, 322 S.W.3d 375 (Tex. App-Houston [14th Dist.] 2010) ........................... 28

*Farrakhan v. State*, 263 S.W.3d 124 (Tex. App.—Houston [1st Dist.] 2006) ...................... 34

*Giglio v. United States*, 405 U.S. 150 (1972). .................................................. 14

*Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007) ........................................... 33

*Heiselbetz v. State*, 906 S.W.2d 500 (1995) ..................................................... 16, 23

*Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986) ...................................... 11

*Holmes v. State*, 323 S.W.3d 163 (Tex. Crim. App. 2010) ........................................ 31

*Hughes v. State*, 850 S.W.2d 260 (Tex. Crim. App—Corpus Christi (1993) ...................... 17

*Janecka v. State*, 937 S.W.2d 456 (Tex. Crim. App. 1996) ....................................... 16

*Jones v. State*, 984 S.W.2d 254 (Tex. Crim. App. 1998) ......................................... 39

*Lilly v. Virginia*, 527 U.S. 116 (1999) ......................................................... 21

*Lofton v. State*, 45 S.W.2d 649 (Tex. Crim. App. 2001) ......................................... 35

*Mendez v. State*, 56 S.W.3d 880 (Tex. App.—Austin 2001) ....................................... 21

*Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005) ........................................... 40, 41

*O'Brien v. State*, 89 S.W.3d 753 (Tex. App.—Houston [1st Dist.] 2002) .......................... 39

*Pointer v. Texas*, 380 U.S. 400 (1965) .......................................................... 21

*Portier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002) ........................................ 30

*Posey v. State*, 966 S.W.2d 57 (Tex. Crim. App. 1998) .......................................... 31, 41

*Ross v. State*, 861 S.W.2d 870 (Tex. Crim. App. 1992 ........................................... 39

*Rousseau v. State*, 855 S.W.2d 666 (Tex. Crim. App. 1993) ...................................... 33, 37, 39

*Royster v. State*, 622 S.W.2d 442 (Tex. Crim. App. 1981) ....................................... 33

*Strickland v. Washington*, 466 U.S. 668 (1984) .................................................. 11

Tex. R. Evid. 44.2(b) ............................................................................ 30

*Thomas v. State*, 669 S.W.2d 420, 423 ........................................................... 17

*Vasquez v. State*, 830 S.W.2d 948 (Tex. Crim. App. 1992) ....................................... 41

**Statutes**

Tex. Code Crim. Proc. 37.09(1)(2) ............................................................................... 37
Tex. Code Crim. Proc. art. 29.03 ............................................................................... 17
Tex. Code Crim. Proc. art. 29.13 ........................................................................... 17, 20
Tex. Penal Code § 22.021 ........................................................................................ 36
Tex. Penal Code § 22.11 .......................................................................................... 36
Tex. Penal Code §22.011 ......................................................................................... 36

**Rules**

Texas Rule of Appellate Procedure 44.2 ...................................................................... 31

**Constitutional Provisions**

Tex. Const. art. 1, § 10 ........................................................................................... 21
Tex. Const. art. I § 10 ............................................................................................. 31
U.S. Const. amend. 5 ............................................................................................... 31
U.S. Const. amend. 6 ........................................................................................... 18, 21

**Rules of Evidence**

Tex. R. Evid. 412 .................................................................................................... 15

## STATEMENT OF THE CASE

A Harris County Grand Jury indicted Rodys A. Sanchez of Aggravated Sexual Assault of a Child in September 6, 2013.[1] Mr. Sanchez was found guilty in the 263rd District Court after a two day trial on September 16, 2014.[2] The jury sentenced Mr. Sanchez to life in prison.[3] Mr. Sanchez filed timely notice of appeal on September 17, 2014. C.R. at 64.

---

[1] C.R. at 5.

[2] C.R. at 51.

[3] C.R. at 60.

6

## ISSUES PRESENTED

**I.** Appellant was denied his constitutional due process right to assistance of counsel because Mr. Greenlee failed to review the State's notice the Complainant made potentially false allegations of sexual abuse against other people that were no-billed; failed to request a continuance at three vital junctures; failed to put a vital bench conference on the record; failed to object to the jury charge; and made a punishment argument that mirrored the State's.

II. Trial court reversibly erred by denying Appellant's request for a jury instruction on the lessor included offense of indecency with a child. Indecency with a child is a lesser included offense of aggravated sexual assault of a child, and the court's refusal to grant Appellant's request for the instruction denied Appellant constitutional right to fair and impartial trial.

## STATEMENT OF FACTS

Michelle Weaver Velasco is the mother of three daughters, D.W., the Complainant, S.W. and P.W.[4] Ms. Velasco began dating the Mr. Sanchez shortly after meeting him in the summer of 2011.[5] Ms. Velasco introduced Mr. Sanchez to her children two months later.[6] Mr. Sanchez spent time with Ms. Velasco's children on several occasions before the sexual assault allegedly occurred.[7]

---

[4] V R.R. at 21.
[5] V. R.R. at 22.
[6] V. R.R. at 28.
[7] V R.R. at 28-30.

On November 5, 2011, Mr. Sanchez and Ms. Velasco planned to take Ms. Velasco's children to Main Event Entertainment Center for an afternoon of bowling.[8] First, however, Ms. Velasco wanted D.W. to have some bonding time with Mr. Sanchez.[9] Ms. Weaver drove to a Woodlands area Taqueria Arandas in the late morning to drop D.W. off with Mr. Sanchez.[10] D.W., Ms. Velasco, and Mr. Sanchez had cell phones.[11]

Mr. Sanchez took D.W. to a nail salon about twenty minutes away from Taqaria Arandas.[12] Ms. Velasco knew where her daughter was.[13] Mr. Sanchez and D.W. spent around three hours at the salon, during which time D.W. got acrylic nails applied and painted.[14] D.W. was in contact with her mother until her phone died.[15] D.W. was tired from not sleeping the previous night, so Mr. Sanchez took her to his apartment for a nap.[16] Mr. Sanchez drank two beers on the way home.[17] D.W. claimed that Mr. Sanchez then snuck her into his room, disrobed, massaged, kissed, licked her nipples, and penetrated her vagina with his finger in his room.[18]

---

[8] V R.R. at 31.
[9] V R.R. at 33.
[10] . V R.R. at 33
[11] VI R.R. at 21.
[12] VI R.R. at 22.
[13] Id.
[14] VI R.R. at 22-23.
[15] V R.R. 35.
[16] VI R.R. at 24.
[17] VI R.R. at 25-26.
[18] VI R.R. at 37, 40.

D.W. texted her mother when Mr. Sanchez was driving her to Main Event.[19] Mr. Sanchez dropped D.W. off at Main Event, and she went inside.[20] Ms. Velasco went to speak to Mr. Sanchez in his car.[21] She noticed that he appeared intoxicated and made a bizarre statement that D.W. is "not ready."[22] Ms. Velasco then went inside the bowling alley to ask what Mr. Sanchez meant by his statement.[23] D.W. made her outcry at this point.[24]

Ms. Velasco then took D.W. the hospital she worked at for a sexual assault examination.[25] D.W. was examined by SANE nurse Susan Spujt.[26] Nurse Spujt took D.W.'s history and conducted a rape kit.[27] Nurse Spujt noted that D.W. was calm, cooperative, and did not claim to be in any pain or discomfort even though she claimed Mr. Sanchez penetrated her vagina.[28] Nurse Spujt swabbed the areas of D.W.s body where D.W. stated that Mr. Sanchez touched her, namely the mouth, nipples, and vagina.[29] Nurse Spujt also swabbed D.W.'s anus.[30]

---

[19] VI R.R. at 47.
[20] VI R.R. at 47.
[21] Id.
[22] V R.R. at 37-38.
[23] . VI R.R. at 48
[24] . Id
[25] V R.R. at 42.
[26] V R.R. at 78.
[27] V R.R. at 79.
[28] Id.
[29] V R.R. at 90.
[30] Id.

The swabs were sent to Harris County Institute of Forensic Sciences, where Robin Freeman worked.[31]  Ms. Freeman was the DNA interpretation manager.[32]  Ms. Freeman testified that a DNA profile matching Mr. Sanchez was present on D.W.'s nipples and anus, although his DNA was not present on or in her vagina.[33]  Nurse Spujt testified that Mr. Sanchez's DNA should have been in D.W.'s vagina if he actually penetrated it under the circumstances that existed.[34]

Mr. Sanchez did not present any evidence in his case in chief at both the guilt and punishment phases.[35]

## SUMMARY OF THE ARGUMENT

In his first point of error, Appellant asserts that he received ineffective assistance of counsel from his trial lawyer, Stephen Greenlee.  The record demonstrates that Mr. Greenlee's performance fell below any objective standard of reasonableness, his deficient performance prejudiced the Appellant, and but for his unprofessional performance there is a reasonable probability the result of the proceeding would have been different.  Mr. Greenlee's prejudicial deficiencies include failing to motion for a continuance when he learned the complainant made allegations of sexual abuse that

---

[31] VII R.R. at 77.
[32] Id.
[33] VII R.R. at 96, 100.
[34] V R.R. at 111.
[35] VI R.R. at 129, VII R.R. at 151.

were no-billed, failing to review the notice given to him about those allegations, and that his sentencing argument that mirrored a traditional prosecutorial argument.

In his second point of error, Appellant asserts that the trial court reversibly erred by excluding a jury charge for the lesser included offense of indecency with a child. Evidence was presented at trial that supported the Appellant's contention that he did not penetrate the complainant's vagina, and that his inappropriate conduct was committed with the intent to arouse or satisfy sexual desires. The trial court's denial of his request for a jury instruction on indecency with a child denied Appellant his constitutional right to a fair and impartial trial.

## ARGUMENT

### ISSUE ONE

**APPELLANT WAS DENIED HIS CONSTITUTIONAL DUE PROCESS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE MR. GREENLEE FAILED TO REVIEW THE NOTICE PROVIDED BY THE STATE THAT THE COMPLAINANT MADE ALLEGATIONS OF SEXUAL ABUSE THAT WERE NO-BILLED; FAILED TO REQUEST A CONTINUANCE AT THREE VITAL JUNCTURES; FAILED TO PUT A VITAL BENCH CONFERENCE ON THE RECORD; FAILED TO OBJECT TO THE JURY CHARGE; AND MADE A PUNISHMENT ARGUMENT THAT MIRRORED THE STATE'S.**

### A. STANDARD OF REVIEW

The Court of Criminal Appeals in *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986), adopted the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 694 (1984) to determine whether counsel has been constitutionally ineffective. To have a conviction reversed on the grounds of ineffective assistance of counsel an

appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the appellant. *Strickland*, U.S. 455 at 687. Appellate courts' review of counsel's performance must be highly deferential. *Id.* "There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, and the defendant must overcome the presumption. We determine the reasonableness of counsel's challenged conduct in context, and view it as of the time of counsel's conduct." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005) (citations omitted).

The record on appeal in an almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance, and that the better course is to pursue the claim in habeas proceedings. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). But when no reasonable trail strategy could justify counsel's conduct, counsel's conduct falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasoning for acting as she did. *Strickland, supra*, at 690.

> We do not require that the appellant show that there would have been a different result if counsel's performance had not been deficient. The defendant must show only that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) citing *Strickland, supra*, at 694.[36]

## B. TRIAL COUNSEL WAS INEFFECTIVE

### RELEVANT FACTS

The State became aware sometime during the week before trial that the Complainant made allegations of rape against three boys in Montgomery County.[37] Ms. Dupree, for the State, claimed that although she did not know why, the allegations were dismissed or no-billed.[38] Ms. Felicia, for the State, stepped in to say the allegations were no-billed.[39] It was Ms. Felicia's belief that the charges were no-billed because the Complainant had almost zero recollection of the abuse.[40] Moreover, the Complainant's mother received a letter from the Montgomery County District Attorney's Office stating that there was a lack of evidence.[41]

The State filed a Motion in Limine to prevent Appellant from cross-examining the Complainant about the Montgomery County allegations.[42] Mr. Greenlee told the court that he did not know about the allegations, or their no-bill, prior to the pre-trial conference.[43] Ms. Felicia alleged Mr. Greenlee had notice of the potentially false

---

[37] IV R.R. at 6-7.
[38] IV R.R. at 6.
[39] IV R.R. at 7.
[40] Id.
[41] IV R.R. at 7-8.
[42] C.R. at 17.
[43] IV R.R. at 9.

allegations because she sent the motion in limine to him on Friday.[44] [45]  The record

clearly reflects that Mr. Greenlee did not review the State's notice of the potentially

unsubstantiated allegation of sexual abuse.[46]  Moreover, Mr. Greenlee did not file a

motion for continuance after he received this untimely and insufficient notice of this

potential *Brady* evidence.[47] [48]

The trial court initially ruled that Appellant could question the Complainant on

this matter because it is relevant to her character for truthfulness.[49]  The State re-urged

her motion on the second day of trial at during a bench conference before the day's

examinations began.[50]   The court changed its ruling based on the cases presented at

the conference.[51]   The court changed its rulings because Mr. Greenlee did not

substantiate the Montgomery County allegations as false.[52]  Mr. Greenlee failed to have

this conference placed on the reporter's record.[53]

---

[44] IV R.R. at 9-10.

[45] Appellant requests the court to take judicial notice that the pretrial hearing occurred on Monday, September 15, 2014. "Last Friday," as referred to be Ms. Felicia would have been Friday, September 12, 2014, one business day before trial.

[46] Id.

[47] IV R.R. at 6-10.

[48] The Montgomery County allegations were potential *Brady* evidence because, as the trial court noted, they could be used to impeach the Complainant's character for truthfulness. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

[49] IV R.R. at 10.

[50] VI R.R. at 6.

[51] Id.

[52] Id.

[53] Id.

1. Trial counsel's failure to review the State's notice that the Complainant made potentially false allegations of sexual abuse in Montgomery County rendered him ineffective.

The record reflects that Mr. Greenlee failed to review the State's Motion in Limine that was sent to him day before trial.[54] [55] The Motion contained notice that the Complainant previously made allegations in Montgomery County that three boys raped her.[56] Mr. Greenlee explicitly stated he knew nothing about the allegations.[57]

Mr. Greenlee's failure to read the Motion in Limine fell below an objective standard of reasonableness. The only reasonably objective trial tactic upon receiving an opposing party's motion in limine is to read it. If a lawyer does not read the opposing party's motion in limine, he cannot be prepared to competently represent his client at the pre-trial conference on the motion. If a lawyer does not read the opposing party's motion in limine he cannot prepare an argument against the motion, nor can he know that he needs to file a motion for continuance, as was necessary in this case. There was no reasonable trial strategy for failing to read the State's Motion in Limine.

Mr. Greenlee's deficient performance prejudiced Appellant. But for Mr. Greenlee's deficient performance, he could have researched the law to argue at the pre-trial conference, made an attempt to substantiate the allegations as false, or, in the alternative, file a motion for continuance for leave to investigate the potential *Brady*

---

[54] IV R.R. at 6-10.
[55] To be clear, Appellant is not alleging ineffective assistance of counsel for failure to investigate.
[56] IV R.R. at 7.
[57] IV R.R. at 9.

15

evidence that is false allegations of sexual abuse.  Had Mr. Greenlee acted as an objectively reasonable lawyer, there is a reasonable probability that trial would have been continued, and he would have been found not guilty of aggravated sexual assault of a child.

> 2. Trial counsel's failure to request a continuance to determine whether Complainant's allegations of sexual assault in Montgomery County were unsubstantiated rendered him ineffective.

>> a. Trial counsel's performance fell below an objective standard of reasonableness.

>>> i. Counsel's Failure To Motion For Continuance Was Unreasonable

An objectively reasonable lawyer would file a motion for continuance upon learning about *Brady* evidence the day before trial.  Texas courts do not hesitate to declare abuse of discretion where denial of a continuance has resulted in prejudice as a result of representation by unprepared counsel.  *Heiselbetz v. State*, 906 S.W.2d 500, 511 (1995).  Prejudice has been found to include unfair surprise, an inability to effectively cross-examine the State's witnesses, and the inability to elicit crucial testimony.  *Barfield v. State*, No. 14-13-0518-CR, (Tex. App.—Houston [14th Dist.] April 2, 2015), (citing *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996)).

A motion for continuance may be granted pre-trial if it is in writing and shows sufficient cause.  Tex. Code Crim. Proc. art. 29.03.  A motion for continuance may be

16

granted during trial when it is made to appear to the satisfaction of the court that by some unexpected occurrence since trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had. Tex. Code Crim. Proc. art. 29.13. While counsel may lodge an oral motion for continuance, it must be in writing to preserve error.

Mr. Greenlee did not have the opportunity to competently prepared for trial by virtue of the untimely notice of the Montgomery County allegations. The tardy disclosure constituted unfair surprise. The only way Mr. Greenlee could have been prepared to represent Appellant at trial, in light of the newly disclosed allegations, was by requesting a continuance to investigate the allegations. Requesting a continuance to investigate the allegations was essential because Appellant could only cross-examine the Complainant about the allegations if they were substantiated as false. *Hughes v. State*, 850 S.W.2d 260, 262-63 (Tex. Crim. App—Corpus Christi (1993) (citing *Thomas v. State*, 669 S.W.2d 420, 423). A continuance and investigation would be required to substantiate the allegations as false.

Mr. Greenlee could have shown sufficient cause by alleging in his motion hypothetical motion that the notice of the allegations was untimely and unfair surprise, and that the allegations may have been *Brady* material because, if false, they could have been used to impeach the Complainant's character for truthfulness. Mr. Greenlee had several opportunities to act as an objectively reasonable lawyer by filing a motion for

continuance. Because Mr. Greenlee did not request a continuance, Appellant was denied his constitutional right to fully cross-examine his accuser by his own counsel. *Thomas*, 699 S.W.2d at 423 (1984)(citing *Davis v. Alaska*, 415 U.S. 308, 318 (1974), U.S. Const. amend. 6.

Mr. Greenlee's first opportunity to file a motion for continuance was when he received notice of the Montgomery County allegations the day before trial. However, because he failed to read the Motion in Limine, it was impossible for him to file a motion for continuance at the most obvious juncture.

Mr. Greenlee's second opportunity to act as an objectively reasonably lawyer and file a motion for continuance was at the pretrial conference when the Motion in Limine about the allegations was discussed. The State's stance was that the allegations were admissible under the rape shield statute.[58] Tex. R. Evid. 412. The trial court's stance was that the allegations were relevant to the Complainant's character for truthfulness.[59] Mr. Greenlee did not even have a stance, other than accepting the court's argument, which serves to support what the record says elsewhere: Mr. Greenlee did not read the State's Motion in Limine.[60] A reasonable lawyer would have requested a continuance as soon as he learned about the no-billed Montgomery County allegations at the hearing. Mr. Greenlee's failure to do so was deficient.

---

[58] IV R.R. at 7-8
[59] IV R.R. 6-10.
[60] Id.

Mr. Greenlee's third opportunity to act as a reasonable attorney and file a motion for continuance was moments before testimony resumed on the second day of trial, when the court entertained the State's objection to Appellant cross examining the Complainant about the Montgomery County allegations.[61] Tex. Code Crim. Proc. art. 29.13. Although the trial court invited the State to lodge her objection at the appropriate time during the pre-trial conference, it could not be expected that the judge would change his ruling because of his adamant argument at the pre-trial conference that Mr. Greenlee was entitled to examine the complainant about the allegations because they could be used to impeach her character for truthfulness.[62] Mr. Greenlee, yet again, failed to act as an objectively reasonable attorney.

Finally, Mr. Greenlee was ineffective for failing get the bench conference prior to testimony on the second day of trial on the record.

### ii. An aggregation of Mr. Greenlee's conduct demonstrates his performance was deficient.

Mr. Greenlee's failure to file a motion for continuance after the State made an untimely disclosure of potential *Brady* evidence fell below any objective standard of reasonableness. First, a reasonable lawyer would have looked at and read the Motion in Limine. Second, a reasonable lawyer would acknowledge that he had to file a motion for continuance to do at least *some* cursory investigation into the Montgomery County

---

[61] VI R.R. at 6.
[62] VI R.R. at 6-10.

allegations to determine if they were unsubstantiated. The no-bill demonstrates that there was at most no probable cause to prosecute the allegations, which is not far off from being false. Third, Mr. Greenlee's conduct was unreasonable at the pre-trial conference for failing to motion for a continuance. Forth, he was again deficient for failing to request a continuance when the court changed its ruling on the State's Motion in Limine. There is simply no reasonable trial tactic for why an attorney would not file a motion for continuance when such vital and potentially exculpatory evidence came to light immediately before trial.

Mr. Greenlee's deficient performance prejudiced the Appellant because he was not able to investigate the allegations, or use them to impeach the Complainant as allowed under *Giglio* and *Brady*. Impeachment evidence of this nature would have served a vital function, and there is a reasonable probability the result at trial would have been different, because there was no evidence other than the Complainant's own words to support her claim that the Appellant penetrated her vagina. It follows that without requesting a continuance, Appellant had a significantly lower chance of getting an acquittal.

### b. Trial Counsel's Deficient Performance Prejudiced the Defendant

Mr. Greenlee's deficient performance prejudiced the Appellant, and there is a reasonable probability that but for his deficient performance the result at trial would have been different. Mr. Greenlee's performance denied the Appellant of his

constitutional due process rights to counsel and to confront his accuser.  U.S. Const. amend. 6.  Tex. Const. art. 1, § 10.

### i. Complainant's character for truthfulness was at issue.

Cross examination is the most potent weapon in a defense attorney's arsenal because it is the best way to expose the truth.  *Pointer v. Texas*, 380 U.S. 400, 403 (1965)(holding a criminal defendant's right to confront a witness is a fundamental right under the Fourteenth amendment), *Mendez v. State*, 56 S.W.3d 880, 893 (Tex. App.—Austin 2001)(holding cross-examination is the "greatest legal engine ever invented for the discovery of truth"); see *Lilly v. Virginia*, 527 U.S. 116 (1999).  Here, the complainant's character for truthfulness was under the microscope, yet Mr. Greenlee's deficient performance meant the Appellant was deprived of the most powerful magnifying glass at the most critical moment of trial—cross-examination of the complainant.  There were several facts that called into doubt the Complainant's character for truthfulness, and nothing would have shed light on the matter like a cross-examination of the Complainant regarding her previous false allegations of sexual abuse.

### ii. The Complainant's Character For Truthfulness Was At Issue For Several Reasons

The Complainant's character for truthfulness was at issue for several reasons. First, the Complainant claimed that the Appellant inserted his finger into her vagina,

and that it was the first time anything had been inserted into her vagina.[63] Yet, curiously, the Complainant did not report any pain or discomfort to Nurse Spujt, as one might expect under the circumstances. [64] Nurse Spujt would have noted in her record if the Complainant had experienced pain or discomfort.[65]

Second, the Complainant directly contradicted Nurse Spujt on the issue of pain while testifying at trial. The Complainant testified that she told Nurse Spujt that she felt pain when the Appellant inserted his finger in her vagina.[66] Nurse Spujt, however, did not record any allegations by the Complainant that she felt pain or discomfort when the Appellant allegedly inserted his finger, or at the examination.[67]

Third, Nurse Spujt did not detect any injuries to the complainant's vagina.[68] While vaginal injuries do not necessarily result from penetration, they are probative.

Fourth, Nurse Spujt testified that she would have expected to find the Appellant's DNA in the Complainant's vagina under the circumstances as the complainant alleged, and the objective scientific evidence supported.[69] Nurse Spujt testified she would have expected to find DNA in the Complainant's vagina in this case because (1) DNA was present everywhere else the Complainant alleged the Appellant

---

[63] VI R.R. at 40-41.
[64] Id.
[65] V R.R. at 102, IX R.R. at State's Exhibit 6.
[66] VI R.R. at 70.
[67] V R.R. at 102, IX R.R. at State's Exhibit 6.
[68] V R.R. at 107.
[69] V R.R. at 110-11, IX R.R. at State's Exhibit 6.

touched her, (2) there was no vaginal discharge that could have removed his DNA from the vaginal cavity, (3) the Complainant did not shower, (4) the Complainant was not wearing a tampon, (5) a condom was not used, (6) the Complainant was not menstruating, (7) the complainant did not douche, (8) the Complainant did not wipe or wash herself, (9) the Complainant did not urinate, (10) the Complainant did not defecate, and (11) the Complainant did not change her clothes.[70]

The aforementioned discrepancies, inconsistent statements, and the lack of the Appellant's DNA in the Complainant's vagina all-the-more demonstrates how *essential* it was to request a continuance in order to determine why the Montgomery County allegations were no-billed.  Mr. Greenlee's deficient performance prejudiced the appellant because he was unable to use the allegations to conduct a potentially reasonable doubt creating cross-examination of the Complainant's character for truthfulness.  Appellant is confident that had Mr. Greenlee filed a motion for continuance that the court denied, this Honorable Court would have found reversible error under the circumstances because unfair surprise, an inability to effectively cross-examine the Complainant, and the inability to elicit crucial testimony all existed. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (1995); *Barfield v. State*, No. 14-13-0518-CR, (Tex. App.—Houston [14th Dist.] April 2, 2015).

---

[70] V R.R. at 110-11, IX R.R. at State's Exhibit 6.

But for Mr. Greenlee's deficient performance, there is a reasonable probability that the jury would have judged the complainant to be dishonest and not believed there was penetration because of her inconsistent statements, lack of DNA, and prior false allegations and abuse. If the jury did not believe there was penetration, it would have found the Appellant not guilty of aggravated sexual assault of a child.

> 3. Trial counsel's argument at punishment rendered him ineffective.

Mr. Greenlee's argument at the punishment phase of trial not only failed to advocate for Appellant, but was deleterious to Appellant's cause and aided the State. His conduct at sentencing did not fall within the wide range of reasonable assistance permissible under the Constitution, and his deficient conduct harmed the Appellant. Moreover, there is a reasonable probability that but for his deficient conduct, the Appellant would not have been sentenced to life imprisonment.

> i. Trial counsel's representation fell below an objective standard of reasonableness.

The record reflects that Mr. Greenlee was performance can best be characterized as part prosecutor, part law professor, and, in lesser part, part defense attorney. For example, Mr. Greenlee told the jury to consider the "innocent" "victim":

> The second thing you're going to consider is [D.W.], and you should. Because here's a young lady, 13 years old and innocent. Children are innocent. It's just that simple. And she did not deserve what happened to her. She did not ask for what happened to her. She was victimized. And you should, and I would expect you to *because certainly if I were in your position, I would do.* You're going to consider her. You should. That's part

24

of the process of punishment, what you know about the victim in the case and your concerns about her. [Sic][71]

Mr. Greenlee also pontificated[72] on the purpose of punishment in a manner that a defendant would expect to hear from the State, but never from his counsel. For example, Mr. Greenlee lectured on retribution:

> And when you mete out that punishment you're going to do, I think, five things. One, you're going to punish Rodys Sanchez. And for the crime which you found him guilty, *the short answer is he should be punished…* you're going to provide some level of retribution in order to do justice to D.W. and certainly to her family.[73]

There is no reasonable trial tactic for informing the jury that they will be providing retribution for the child victim and her family, or inserting his own opinion that his own client should be punished. Mr. Greenlee stole the aforementioned passage from the State's mouth:

> And you get to, *just like Mr. Greenlee said*, look at a lot of things. And one of the first things that you get to look at when you are thinking about what to do with him [Appellant] is D.W. *and that's absolutely right…* And so, when you're looking at what to do, you're going to look at D.W.'s case and everything you know about her.[74] [75]

Mr. Greenlee also lectured on deterrence:

> The third thing your punishment level will do is clearly send a message to the citizens of Harris County that if you ever do this type of conduct, we think it's serious and they're going to punish it accordingly and send that

---

[71] VIII R.R. at 6-7.
[72] Pontificate: To speak or express your opinion about something in a way that shows you think you are always right. Merriam-Webster Dictionary, www.mirrian-webster.com/dictionary/pontificate
[73] XIII R.R. at 10.
[74] VIII R.R. at 15, 22.
[75] Excerpt from State's closing argument at punishment.

message…. Fourth, you're going to clearly, at least, deter Rodys Sanchez. And you may deter other people who may feel that it is okay to prey on children. Because it is not okay to prey on anybody, certainly not the most innocent of us, and that's children.[76]

There is no reasonable trial tactic for a defense lawyer to inform the jury that they will be sending a clear message of deterrence. The only message behind this argument is that Mr. Greenlee thinks this is a serious crime and that his client should be punished severely so as to deter the Appellant and other would-be child molesters. Mr. Greenlee again inserted his objectionable opinions, in addition to using language not even the prosecutor used, such as, "prey" on the "most innocent among us."[77]

This, once again, is the type of argument typically reserved for a prosecutor:

And you know what, not only do you need to protect young girls, you need to protect yourselves.[78] [79]

Mr. Greenlee also suggested he felt the Appellant should be punished severely:

…We are going to punish you for what you did and because you deserved to be punished and punished severely.[80]

---

[76] VIII R.R. at 10.

[77] Mr. Greenlee described Appellant as a person who preys on innocent children three times, while the State did not use that sort of description once.

[78] VIII R.R. at 22.

[79] Excerpt from State's closing argument at punishment.

[80] VIII R.R. at 11.

Mr. Greenlee's performance fell below an objective standard of reasonableness. There is no reasonable trial tactic that could justify a defense lawyer making the type of arguments that are typically made by the State. While Mr. Greenlee did make a scant argument for rehabilitation, any advocacy for the Appellant was significantly outweighed by Mr. Greenlee's persistent reminders that the Appellant needs to be punished severely in order to provide justice for the Complainant and her family, deter the Appellant and others from preying on innocent children, and to provide retribution for his transgressions. Mr. Greenlee's conduct does not fall within the wide range of reasonable professional assistance.

ii. Trial counsel's deficient performance prejudiced the Appellant.

Mr. Greenlee's deficient performance prejudiced the Appellant. While it is difficult to know what sentence the jury would have imposed had Mr. Greenlee advocated for his client in an objectively reasonable manner, there is a reasonable probability that but for his deficient performance, the jury would not have imposed a life sentence on the Appellant.

The jury would have expected Mr. Greenlee to give a reason why his client should be spared the maximum sentence, yet he did not. When defense counsel fails to find any reason for leniency, to advocate any reason for leniency, and to urge leniency, a jury can have no reason to be lenient. When defense counsel proclaims in

so many words, as Mr. Greenlee did, that his client preys on innocent children and that he should be punished severely to satisfy the jurisprudential goals of justice for the victim, retribution, and deterrence, he prejudices his client to the point that his deficient performance undermines confidence in the outcome.

4. Counsel was ineffective for failing to object to expert testimony at sentencing to State's line of questioning about the best treatment for sex offenders, and expert's statement that violated Appellant's right to not testify, and failing to object to the jury charge.

1. Counsel was ineffective for failing to object to State's line of questions about the best treatment for sex offenders.

Expert testimony is admissible if it assists the jury in intelligently determining an issue but does not decide the issue for the jury. *DeLeon v. State*, 322 S.W.3d 375 (Tex. App-Houston [14th Dist.] 2010), See Duckett v. State, 797 S.W.2d 906, 914 (Tex.Crim.App.1990), disapproved on other grounds. Cohn v. State, 849 S.W.2d 817, 819 (Tex.Crim.App.1993); Drake v. State, 123 S.W.3d 596, 606 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). A defendant must establish that the witness's statement was inadmissible, and that the trial court would have committed harmful error by overruling an objection. *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex.Crim.App.2002), *Alexander v. State*, 282 S.W.3d 701, 705 (Tex.App.-Houston [14th Dist.] 2009, pet. ref'd).

The State called Dr. Danielle Madera to testify at sentencing.[81] Dr. Madera is a child psychologist from the Children's Assessment Center.[82] She was called, in part, to testify about punishment for sex offenders.[83] Dr. Madera testified that the "only sure way" to make sure a sex offender will not reoffend is to "lock them up in prison."[84] Mr. Greenlee failed to object to this highly prejudicial and improper opinion. Her statement was inadmissible because it invades the province of the jury.

Here, the statement by Dr. Madera that prison is only sure way the ensure that a defendant does not reoffend was inadmissible because it decided the issue of punishment for the jury. Dr. Madera's statement decided punishment for the jury because her statement was definitive and left the jury with no other options ensure the safety of the community.

> 2. Counsel was ineffective for failing to object to the State's expert's testimony that a defendant must admit responsibility in order to be rehabilitated in violation of Appellant's Fifth Amendment right not to testify.

The State asked Dr. Madera that if a defendant does not take responsibility for his actions, does it affects their likelihood of reoffending.[85] Mr. Greenlee did not object to the question.[86] Dr. Madera answered that the only hope of controlling a sex offender

---

[81] VII R.R. at 81.
[82] Id.
[83] VII R.R. at 141.
[84] Id.
[85] XIII R.R. at 141.
[86] Id.

29

is requiring him to admit responsibility.[87]  Mr. Greenlee failed to object to Dr. Madera's answer.[88]

This question and answer was a comment on Appellant's post-arrest silence, and violated the Appellant's constitutional right to remain silent.  U.S. Const. amend. 5, Tex. Const. art. I § 10.  This comment violated the Appellant's right to be free from compelled self-incrimination under Art. I, § 10, *Texas Constitution.*707 S.W.2d 575, 578 Tex. Crim. App. 1986); *Redding v. State,* 149 Tex.Cr.R. 576, 197 S.W.2d 357 (Tex.Cr.App.1946).  Accordingly, Appellant must establish the statement was admissible, and the court would have committed harmful error by overruling an objection.  *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex.Crim.App.2002), *Alexander v. State*, 282 S.W.3d 701, 705 (Tex.App.-Houston [14th Dist.] 2009, pet. ref'd)).

Harm analysis is controlled by Texas Rule of Appellate Procedure 44.2.  *Portier v. State*, 68 S.W.3d 657, 655 (Tex. Crim. App. 2002).  Courts apply Rule 44.2(b) harmless error review for non-constitutional errors.  However, when a constitutional error exists, the courts apply Rule 44.2(a).  Constitutional error arises if an evidentiary ruling significantly undermines fundamental elements and substantial right of the accused's defense.  *Id.*  Under 44.2(a), the appellant must demonstrate that the trial court's error contributed to his conviction or punishment to obtain a reversal.  *Holmes v. State*, 323

---

[87] XIII R.R. at 141-21.
[88] Id.

S.W.3d 163, 177-74 (Tex. Crim. App. 2010). Here, Dr. Madera's comment significantly undermined Appellant's fundamental and substantial right to not testify. Had Mr. Greenlee made an objection to Dr. Madera's improper statement, and had the trial court overruled his objection, the court would have committed harmful error.

> 3. Defense counsel was ineffective for failing to object to the jury charge.

A defense attorney's failure to object to a jury charge almost always amounts to ineffective assistance of counsel when an appellate court finds that reversible error in the omission of a jury charge without instruction. *Posey v. State*, 966 S.W.2d 57, 71 (Tex. Crim. App. 1998)(Judge Womack concurrence). Here, Mr. Greenlee failed to object to the court's failure to include a jury instruction for the lesser included offense of indecency with a child.[89] As discussed below, the trial court's error amounts to egregious harm, and therefore Mr. Greenlee was ineffective for failing to object to the jury charge.

Mr. Greenlee was ineffective, his deficient performance prejudiced the Appellant, and there is a reasonable probability that but for his deficient performance, the Appellant would have been found not guilty of the charged offense, or sentenced to life in prison.

---

[89] VI R.R. at 130.

## ISSUE TWO

## THE TRIAL COURT ERRED IN REFUSING TO INCLUDE A JURY INSTRUCTION FOR THE LESSER INCLUDED OFFENSE OF INCEDENCY WITH A CHILD

### RELEVANT FACTS

The charge submitted to the jury provided only two options: either acquit Mr. Sanchez or find him guilty of aggravated sexual assault of a child. The trial court refused Appellant's request to include instruction on the lesser included offense of indecency with a child. In doing so, the court committed reversible error.

Mr. Sanchez's trial counsel made a specific oral request for the lesser included offense of indecency with a child.[90] It appears that the instruction was included in the court's proposed jury charge:

> The Court: Have y'all had a chance to look over the charge at all?
> Ms. Dupree: We have your honor, at all.
> The Court: State have any problems with it?
> Ms. Dupree: Just we would object to the lesser as there has been no evidence that it was only on the outside. She very clearly stated that it was on the inside. Also indecency would be asking for the State to prove "with the intent to arouse or gratify the sexual desire," which is not an element of aggravated sexual assault. So, I don't believe it would be a true lesser and there's been no evidence of it, either.
> The Court: What says the defense, please?
> Mr. Greenlee: Well, I would – I asked for the lesser because the testimony from the SANE nurse contradicted the testimony from the defendant. Excuse me, from the complaining witness.

---

[90] VI R.R. at 127.

[91]After consideration, the trial court denied defense counsel's request for the lesser included offense of indecency of a child.[92] The court then took lunch and asked if the defense has an objection to the final jury charge.[93] Mr. Greenlee did not object to the charge.[94]

> A. Indecency with a child is a lesser included offense of aggravated sexual assault of a child.

A two-pronged test is used to determine whether a lesser included offense must be included in a jury charge. The first prong in this analysis is determining if the lesser included offense is "included within the proof necessary to establish the offense charged." *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993) (citing *Royster v. State*, 622 S.W.2d 442 (Tex. Crim. App. 1981)). This prong is purely a question of law and does not depend on the evidence produced at the trial. *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007). The second prong requires that "some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau*, 855 S.W.2d at 672). Anything more than a scintilla of evidence will suffice so long as it establishes the lesser offense as a "valid, rational alternative to the charged offense." *Hall*, S.W.3d at 536.

---

[91] VI R.R. at 127-28.
[92] VI R.R. at 128.
[93] VI R.R. at 129-30
[94] VI R.R. at 130.

Indecency with a child is a lesser included offense of aggravated sexual assault of a child. *Farrakhan v. State*, 263 S.W.3d 124, 140 (Tex. App.—Houston [1ˢᵗ Dist.] 2006) (disc. rev'w grt'd) (citing *Cunningham v. State*, 726 S.W.2d 151, 155 (Tex. Crim. App. 1987) (holding indecency of a child is a lesser included offense of aggravated sexual assault of a child, notwithstanding the fact that the former offense contained the element that the defendant act with specific intent to arouse or to gratify someone's sexual desire, while the charged offense did not.)) In *Farrakhan*, the Court acknowledged *Cunningham's* holding that "the lesser offense's element of acting with specific intent to arouse or gratify the sexual desire of any person was necessarily inherent in the greater offense's element of… knowingly causing the penetration of the child's mouth…" Id.

The First Court of Appeals "determined that the Legislature did not intend that the 'intent to arouse and gratify' requirement [of indecency with a child] be excluded from proof of the elements of aggravated sexual assault,' which did not expressly include that element. *Farrakhan*, 263 S.W.3d at 141 (citing *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); *Bottenfield v. State*, 77 S.W.3d 349, 352 (Tex. App.—Fort Worth) (finding that indecency with a child is a lesser included offense of aggravated sexual assault of a child); *Sarabia v. State*, 227 S.W.3d 320, 324 (Tex. App.—Fort Worth 2002) (intent to arouse or gratify sexual desire is an implicit element of aggravated sexual assault of a child). Moreover, a defendant is entitled to a jury charge on the lesser included offense if there is some evidence that, if he is guilty, he is guilty

only of the lesser. *Bottenfield*, 227 S.W.3d at 362 (Tex. App.—Fort Worth 2002)(citing *Lofton v. State*, 45 S.W.2d 649, 652 (Tex. Crim. App. 2001).

In applying the first prong of *Rousseau* to Mr. Sanchez's case, there can be little doubt that indecency with a child is a lesser included offense of aggravated sexual assault of a child. *Supra Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998), *Bottenfield v. State*, 77 S.W.3d 349, 352 (Tex. App.—Fort Worth). A comparison of the elements required to prove aggravated sexual assault of a child and indecency of a child would be instructive. To prove aggravated sexual assault of a child as charged, the State would be required to prove beyond a reasonable doubt that:

1) A person

2) Intentionally or knowingly

3) Commits sexual assault as defined in Pen § 22.011(a)(1), and

4) The victim is younger than 14 years of age.

Tex. Penal Code § 22.021(a)(2)(B).

Indecency of a child requires the State to prove that:

1) A person

2) With a child younger than 17 years of age

3) Whether the child is of the same or opposite sex

4) a. Engages in sexual contact with the child, or

35

b. Causes the child engage in sexual contact.

Tex. Penal Code § 22.11(a)(1).

The only difference between these two offenses is that aggravated sexual assault of a child requires penetration or contact between the defendant's complainants sexual organs and the defendant, while indecency with a child only requires contact of the same. Tex. Penal Code §22.011. Furthermore, as stated above, the courts have acknowledged that the legislature assumed that the specific intent to arouse and gratify for an indecency charge is included in the *mens rea* element of aggravated sexual assault of a child. *Farrakhan v. State*, 263 S.W.3d at 141 (Tex. App—Houston [1ˢᵗ Dist.] 2006). Therefore, indecency with a child is a lesser included offense of aggravated sexual assault of a child because it is established by proof of the same or less all the facts required to establish the charged offense, and differs from the charged offense only in respect to a less serious injury suffices to establish its commission. Tex. Code Crim. Proc. 37.09(1)(2).

B. There is a question as to whether Appellant penetrated the Complainant's vagina, thus, an indecency with a child instruction would have been proper.

Because it can be established as a matter of law that indecency with a child is a lesser included offense of aggravated sexual assault of a child, thus satisfying the first prong of the *Royster-Rousseau* test adopted by the Court of Criminal Appeals, the second prong must then be addressed regarding whether some evidence exists in the record

36

"that would permit a jury rationally to find that if the defendant is guilty, he is guilty of only the lesser offense." *Rousseau*, 855 S.W.2d at 673.

An examination of the record reveals that based on the evidence presented at trial, a rational jury could have convicted Mr. Sanchezo only the lesser offense of indecency with a child had such an instruction been included in the court's charge. Simply put, there is evidence that Mr. Sanchez did not penetrate the Complainant's vagina. Evidence on the record that would lead a jury to this conclusion includes:

- Nurse Spujt swabbed the Complainant's vagina for DNA.[95]

- DNA expert Robin Freeman testified that Appellant's DNA was everywhere the Complainant said Appellant touched her, except for her in her vagina.[96]

- Nurse Spujt's testimony that she expected Appellant's DNA to be found in the Complainant's vagina based on all the facts and circumstances, including what the Complainant told her.[97] These facts and circumstances include:

  o DNA was present everywhere else the Complainant alleged the Appellant touched her.
  o There was no vaginal discharge that could have removed his DNA from the vaginal cavity.
  o The Complainant did not shower.
  o The Complainant was not wearing a tampon.
  o A condom was not used.
  o The Complainant was not menstruating.
  o The Complainant did not douche.
  o The Complainant did not wipe or wash herself.

---

[95] V R.R. at 110-11, IX R.R. at State's Exhibit 6
[96] VII R.R. at 96, 100.
[97] V R.R. at 102, IX R.R. at State's Exhibit 6.

37

- o The Complainant did not urinate.
- o The Complainant did not defecate.
- o The Complainant did not change her clothes.[98]

- The Complainant testified this encounter was the first time anything had ever been inserted into her vagina, yet Nurse Spujt testified that the Complainant did not state that she did not feel any pain or discomfort in her vagina resulting from the insertion.[99]

- Nurse Spujt would have written in her SANE chart that the Complainant experienced pain or discomfort if the Complainant stated she did.[100]

- The Complainant testified she felt pain and discomfort, which conflicts with Nurse Spujt's testimony.[101]

- The Complainant testified she told Nurse Spujt she felt pain and discomfort, which conflicts with Nurse Spujt's testimony.[102]

- There were no injuries to the Complainant's vagina.[103]

Based on this evidence, a rational jury could have concluded that Mr. Sanchez did not penetrate the complainant's vagina. A jury could have found that Mr. Sanchez contacted the Complainant's vagina without penetrating it.

> If evidence from any source raises the issue of a lesser included offense, the charge must be given… "it is… well recognized that a defendant is entitled to an instruction on every issue raised by the evidence, whether produced by the State or the defendant and whether it be strong, weak, unimpeached, or contradicted." It is then the jury's duty, under the proper

---

[98] V R.R. at 110-11, IX R.R. at State's Exhibit 6.
[99] V R.R. at 79.
[100] V R.R. at 102, IX R.R. at State's Exhibit 6.
[101] VI R.R. at 70.
[102] VI R.R. at 70.
[103] V R.R. at 107.

> instructions, to determine whether the evidence is credible and supports the lesser included offense.

*Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993).

Because there was more than a scintilla of evidence that Appellant did not penetrate the Complainant's vagina, he was entitled to the lesser included instruction in indecency with a child. *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998) (citing *Bingall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). The credibility of the evidence which would show that Appellant was only guilty of aggravated sexual assault of a child, not indecency with a child, is not to be taken into consideration; nor is any conflict between these evidentiary facts to be considered—the presence of any evidence that raised the possibility that Mr. Sanchez was only guilty of indecency with a child requires that the instruction of the lesser included offense be given to the jury. *Ross v. State*, 861 S.W.2d 870, 874 (Tex. Crim. App. 1992); *Saunders v. State*, 913 S.W.2d 564 (Tex. Crim. App. 1995); *Banda v. State*, 890 S.E.2d 42, 60 (Tex. Crim. App. 1994); *O'Brien v. State*, 89 S.W.3d 753. 755 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Where the evidence given at trial is subject to two reasonable inferences, the jury should be instructed on both inferences. *Saunders* at 571; *Thomas v. State*, 699 S.W.2d 845, 851 (Tex. Crim. App. 1985). Because there was some evidence that Mr. Sanchez did not penetrate the Complainant's vagina, he was entitled to have the jury consider the lesser offense of indecency with a child.

C.  Refusing to give the jury instruction on indecency with a child harmed appellant, requiring that his conviction be reversed.

When a defendant fails to object to a jury charge, appellate courts will not reverse for jury-charge error unless the record shows egregious harm to the defendant. *Ngo v. State*, 175 S.W.3d 738, 773-74 (Tex. Crim. App. 2005). In other words, a new trial will not be granted unless the harm is such that the defendant was denied a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim App. 1984)(en banc). The actual degree of harm must be viewed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. Id.

Although defense counsel requested a jury charge the lesser included offense of indecency with a child, he failed to object to the final jury charge.[104] Thus, Appellant must show that he was egregiously harmed by the trial court's error of excluding the indecency charge. If the absence of a lesser included offense instruction left the jury with the sole option either to convict the defendant of the charged offense or to acquit him, a finding of harm is essentially automatic because the jury was denied the opportunity to convict the defendant of the lesser offense. *Saunders* at 571.

---

[104] VI R.R. at 130.

Here, the court's error was egregious harm because denying Appellant's request for the lesser included affected the very basis of the case, deprived him of a valuable right, and vitally affected his sole defensive theory. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). Denial of the requested lesser included jury charge resulted in Appellant failing to receive a fair and impartial trial. *Bluit v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). Appellant was egregiously harmed because the jury was precluded from considering his only defense, namely that he did not penetrate the Complainant's vagina. *Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998) (citing *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992). In cases such as this, there is a distinct possibility that the jury, believing that Mr. Sanchez committed some crime, but only having the option to convict him of the of the greater offense, may have chosen to find him guilty of the greater offense, rather than to acquit him altogether, even though it had a reasonable doubt that he really committed the greater offense. Thus, it is clear that the trial court's error in refusing the jury instruction on the lesser offense of indecency with a minor resulted in egregious harm. The trial court committed reversible error by denying Appellant's request to include a jury instruction for the lesser included offense of indecency with a minor.

**CONCLUSION**

Mr. Sanchez was denied his constitutional right to effective assistance of counsel. Mr. Greenlee's conduct of failing to read the State's Motion in Limine, which was intended to inform Mr. Greenlee about the Complainant's Montgomery County allegations of sexual abuse that resulted in no-bills, was not objectively reasonable. Mr. Greenlee's failures to motion for a continuance on the day before trial, at the pre-trial conference, and on the second day of trial when the court changed his ruling was also not objectively reasonable; nor was his failure to put the conference on the record. Mr. Greenlee's deficiencies of failing to object to Dr. Madera's improper testimony, and the jury charge also rendered him ineffective. Mr. Greenlee's deficient performance harmed Mr. Sanchez by denying him his fundamental rights to effective assistance of counsel and to competently cross-examine his accuser about false allegations of sexual abuse. Mr. Sanchez suffered great harm from his attorney's numerous and grave deficiencies.

Mr. Sanchez was also denied his fundamental rights to a fair and impartial trial by the trial court's denial of a jury instruction on the lesser included offense of indecency with a child. More than a scintilla of evidence was presented that Mr. Sanchez did not penetrate the Complainant's vagina. This placed the jury in a moral dilemma of releasing a person who may sexually assaulted the Complainant without penetrating her vagina, or convicting him of aggravated sexual assault of child. This is precisely the quandary that the inclusion of lesser included offenses is meant to prevent. Under the facts of this case and with the issue of whether or not Mr. Sanchez penetrated

the Complainant's vagina being the paramount contested issue, the refusal to grant the lesser included offense had a substantial effect on the outcome of the case and constitutes egregious harm.

## PRAYER

FOR THESE REASONS, Mr. Rodys A. Sanchez asks this Honorable Court of Appeals to reverse cause number 1400848 and remand the case for a new trial, or, in the alternative, remand for a new sentencing hearing.

Respectfully submitted,

_____
Cory J. Roth
Cory Roth Law Office
4306 Yoakum Boulevard, Suite 240

Houston, Texas 77006
T. 713-864-3400
F. 713-864-3413
Bar No. 24088337
Attorney for Appellant

## CERTIFICATE OF SERVICE

I certify that a copy of this Brief for Appellant has been served upon the Appellate Division of the Harris County District Attorney's Office, on this the 21<u>st</u> day of <u>April</u>, 2015, by filing a copy on the District Clerk's website and requesting electronic service to Harris County District Attorney's Office, and was also sent first-class mail to:

Rodys A. Sanchez
TDCJ# 1955024
2665 Prison Rd. #1
Lovelady, TX 75851

_____
Cory J. Roth
Attorney for Appellant

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e)(i).

1. Exclusive of the portions exempted by Tex. R. App. Proc. 9.4(i)(1), this brief contains 8461 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced typeface using Garamond 14 point font in text and Garamond 12 point font in footnotes.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or copy of the word printout in Court.

Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4(j), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

_____
**Cory J. Roth**